GABRIEL WINTER and B. G. LATTIMER, Plaintiffs in Error, v. ZACHARIAH C. NORTON, Defendant in Error.

*Error to Washington.*

1. The attachment act of 1849 is not repealed by the attachment act of 1857, except so far as they conflict.  Both are to be taken as one statute.
2. Pleading to the merits waives matter in abatement.
3. When the intention of one who makes a writing is to be judged of by the writing *per se*, it is a question for the court; but when a writing is to be judged of by extrinsic facts, and is a part of a transaction, the rest of which consists of words or acts, the whole *evidence should be submitted to the jury.*

IN July, 1851, plaintiff sued out of the Washington District Court a writ of summons in assumpsit, which was personally served on one of the defendants, the other not being found.  At the same time he filed a bond, and an affidavit that the defendants were non-residents, and took out a writ of attachment under the provisions of the act of 1849, upon which the goods of the defendants were attached, and a bond taken for their forthcoming or their value, to abide the event of the suit.  At the return term before Pratt, Justice, (an at-

torney sitting in the judge's place, without objection,) the defendants moved to quash the attachment, which was denied. They then pleaded the attachment in abatement of the summons, which was overruled. They then pleaded *non-assumpsit*, upon which the plaintiff had a verdict and judgment. A writ of error was brought, and the judgment and the cause remanded " for further proceedings according to law."

At the last Washington term, before Olney, Justice, the cause came on for trial. The defendants again moved to quash the attachment, which was denied. They then offered anew their plea in abatement, which was not received. To these rulings they excepted. The issue on the merits was then tried, and the plaintiff again had a verdict and judgment. By a bill of exceptions taken at the trial, it appears that the defendants were a mercantile house in San Francisco, to whom the plaintiff consigned a cargo of lumber from Oregon, which they disposed of and rendered an account, showing a balance of four thousand dollars in their hands subject to his order.

Some months afterward, defendant, Winter, being on a visit to Oregon, the plaintiff, by his agent, Leland, demanded payment of the balance, presenting, at the same time, a paper writing in these words : " Zachariah C. Norton demands of Winter & Lattimer the sum of two thousand dollars, due from them for money received to said Norton's use." Winter denied the amount, and expressed a willingness to pay a less sum, and wrote on the back of the paper these words : " Presented by Alonzo Leland, and answer, will pay him amount due as per account rendered him. Winter & Lattimer." The court instructed the jury, that if the case stood on the original transaction, they might well find the defendants to be depositaries of the plaintiff's money, and not liable until a failure to comply with his order respecting it. " But that the written demand and refusal, which it is the duty of the court to construe, showed that whatever might have been its original character, it then was, or thereby became, a debt due from the defendants to the plaintiff."

To this instruction the defendants excepted.

The errors assigned are—

1. Refusal to quash the attachment.
2. Refusal to receive the plea in abatement.
3. The instructions given to the jury.

OLNEY, J.   No question is raised as to the regularity of the attachment under the act of 1849; but the motion to quash proceeds on the ground, that this act was repealed by the act of 1851, which took effect before the commencement of this suit.   The act of 1849 gives an attachment as auxiliary to a suit commenced by process against the person to secure a sufficient fund for the payment of the judgment, to be recovered against the defendant *in personam.*   The act of 1851 gives an attachment *in rem,* to subject *all* the property of non-residents and absconding debtors to distribution among all their creditors.   The combined effect of the two is to enable a creditor, whenever he can bring his debtor into court by personal service, to secure his own debt by attachment; and as others had equal opportunity, he· gets the benefit of his superior diligence.   But if personal service cannot be had, so that no one is in fault, but all equally unfortunate, then notice must be given, and all may come in and have distribution.   As the act of 1849 can have a modified effect in connection with that of 1851, the two must be taken together as one statute.   (*McLaughlin* v. *Hoover*, at this term.)   In refusing to quash the attachment, no error was committed.

The plea in abatement ·presented the same. question, and would, if received, have been unavailing, but it was rightly rejected for another reason.   By pleading to the merits, the defendants waived the matter in abatement—not that *putting on file* a plea to the merits necessarily waives a plea in abatement then or before filed.   That depends on the course of practice in the particular court.   Where, as under our practice, no pleas are filed in vacation, but the issue is made up in the hurry of the term, and the cause immediately tried, it is

Winter *v.* Norton.

found convenient to file at one time all motions, demurrers, and pleas of whatsoever nature, to be taken up in their order; but by taking up and proceeding upon any one of these, the defendant waives those which should have preceded. It is said, however, that the record shows these preliminary questions to have been settled, and the issue to have been made up by and before a person not authorized to hold pleas in that court; and the judgment must be supposed to have been reversed for that cause; and when remanded, those former pleadings should have been taken for nothing; and the defendants allowed to defend, as being for the first time in court.

But the pleadings are the *altercations of parties,* and the filing of them is their voluntary act. The court has only to decide the questions raised upon, and the issues made by those pleadings. If the defendants were dissatisfied with the decision on their plea, because of the alleged defect of power in the person making it, or for other cause, they should not have waived that plea by pleading over, but should have allowed judgment to go, and then brought their writ of error. Having taken their chances for success in a protracted and expensive litigation of the merits, they were not at liberty to fall back upon matter in abatement.

No repleader being awarded by this court, the cause went down for trial anew on the issue in the record. The District Court was competent to admit a new plea, if the justice of the case required it. But to allow the general issue to be withdrawn, and a plea in abatement filed for such a cause, would scarcely have been less than an abuse of discretion. It was not asked as a favor, however, but demanded as a right, and was properly refused.

The instructions, excepted to and assigned for error, present the inquiry, whether the effect of the written demand for payment, and the written reply, was a question of law for the court, or a question of fact for the jury. Law and fact are not always readily distinguishable. In respect to written instruments, it is sometimes difficult to say where the office of the court ceases, and that of the jury begins. When the

intention of the writer is to be judged of by the writing, it is a question for the court, but when the meaning is to be judged of by extrinsic facts, or when the writing forms part of a transaction, the rest of which consists of words spoken or acts done, or when, whatever its meaning, it is but a circumstance tending to establish some other fact, it is for the jury to say, whether the language was used in the sense imputed; or what is the character of the entire transaction, of which the writing forms a part; or what is the truth of the ultimate fact which it tends to prove. In these cases the writing must go to the jury, to be considered with the other evidence. In this a written and spoken demand were made, and a written and spoken answer given.

The spoken words were not merged in the writings, but the two were concurrent acts, and their combined effect was properly a question for the jury. Again, the written answer referred to an account previously rendered.

The original account of sales showed a larger balance than was now claimed, or admitted to be due. The defendants might well have argued to the jury, that the reference was to the original account, which placed them on their right and duty to have the money at San Francisco, subject to the plaintiff's order; and the plaintiff might have argued that the reference was to a later accounting, and amounted to a promise to pay a general balance, thus making its meaning and effect turn on a disputed fact outside of the writing.

In determining conclusively, as matter of law, the effect of these writings, which formed only a part of the transaction, and which also depended for their meaning on a disputed extrinsic fact, the court erred, and it is not for this court to say the defendants were not injured by it. But for that error, the result might and lawfully could have been different. The judgment must, therefore, he reversed, and the cause sent down for a new trial.

                              Judgment reversed.