Manistee Iron Works Co. vs. Shores Lumber Co.

MANISTEE IRON WORKS COMPANY, Appellant, vs. SHORES LUM-
BER COMPANY, Respondent.

*November 29, 1895 — January 7, 1896.*

*Contracts: Construction: Supplementary oral agreement: What things
are implied: Work on barge: Delivery to contractor in suitable con-
dition: Compounding engine: " Necessary connections:" Court and
jury: Penalty or liquidated damages?*

1. A written contract for the doing of work upon a steam barge within
   a specified time might be supplemented by a subsequent oral agree-
   ment as to the time when the barge should be delivered to the
   contractor.
2. A contract must be construed as if those terms which the law will
   imply were expressly introduced into it.
3. Plaintiff having contracted to do certain work at Sheboygan on de-
   fendant's steam barge, then lying at Chicago, and defendant being
   bound to deliver the barge at Sheboygan, it is fairly to be implied
   that the barge was to be delivered there in a reasonably suitable
   condition to enable plaintiff to perform the contract.
4. Whether a valve-stem guide which was a part of the low-pressure
   engine already in a barge was within the terms of a contract to
   compound the engine and, among other things, "to make new
   valve stems and *necessary connections* to work high-pressure
   valves," so that the contractor was bound to replace it with a
   new one, is *held* upon the evidence to have been a question for the
   jury.
5. In a contract to do certain work upon a steam barge it was pro-
   vided that the contractor should pay $50 per day for each day the
   boat was delayed after a certain date, and that "as regards the
   date of finishing and *fine*" the contract should include certain
   things. It appeared that $50 was about the value of the use of the
   barge per day. *Held,* that the provision was one for the payment
   of liquidated damages and not of a penalty.

APPEAL from a judgment of the circuit court for Ashland
county: JOHN K. PARISH, Circuit Judge. *Reversed.*

The plaintiff brought this action against the defendant to
recover a balance of $2,030.45, and interest from May 15,
1893, alleged to be due under a written contract between
the parties, and for extra work and materials.

By the contract made December 29, 1892, the plaintiff agreed to make and compound a certain marine engine, and to build and manufacture for it a certain marine fire box boiler, and put the same on the foundation in the defendant's steam barge, D. W. Powers, at Sheboygan, Wis., according to certain specifications, to pass inspection for 140 pounds steam, and "do any other work not mentioned which would properly come in putting new boiler in boat;" and, among other things, "to make new valve stems and necessary connections to work high-pressure valves, refit old link and eccentric rods, necessary drain cocks and pipes for cylinders, new high-pressure exhaust pipe, refit present steam pipe," etc., "in fact, all pipes from boiler to engine that have to be changed on account of new boiler and engine, and one exhaust shifter," for the sum of $6,340, "to have all finished by April 15, 1893, and to have all machinery in boat so that carpenters can complete cabins by April 1, 1893. All work to be done in a good and workmanlike manner. In case all work is not finished by April 15, 1893, [the plaintiff] to pay $50 per day for each day the boat is delayed;" and that, "as regards the date of finishing and *fine*, this contract is made to include the work of compounding the engine as well."

The defendant, it was alleged, agreed to deliver the said barge in the city of Sheboygan to the plaintiff January 4, 1893, in such condition that it would not be delayed in the performance of its said contract. The plaintiff claimed that it was delayed in the performance of its contract by the failure of the defendant to deliver the barge at the time aforesaid; and that it was not delivered until about the middle of January, 1893, in a leaky and unseaworthy condition, a great quantity of ice and water being in the hold and engine room, making it impossible for the plaintiff to obtain the necessary measurements to build the engine and boiler specified; and that, by reason of such delay occasioned by the

act of the defendant, it was unable to complete said con-
tract until May 16, 1893, whereby the plaintiff was occa-
sioned expenses, in wages of employees and otherwise, to
the amount and value of $100. It also claimed that de-
fendant was indebted to it for taking out an old crank shaft
and rod, and for making and constructing and placing in
position a new one in and for said barge, at the agreed price
and value of $475, which was completed May 12, 1893; and
that the defendant was further indebted to it in the sum of
$115.45 for extra work and labor and materials used in re-
pairing and putting in good operating shape the engines and
machinery in and about said barge, not expressly contracted
for, the same having been done at the instance and request
of the defendant,— in all, amounting to the sum of $7,030.45.
Only $5,000 of this amount had been paid, and judgment
was claimed for $2,030.45, with interest from May 15, 1893.

The defendant denied the principal allegations of the com-
plaint as to performance, and alleged, by way of counter-
claim, that the plaintiff failed and neglected to perform its
contract by not finishing and completing the work by April
15, 1893; that the work was not completed until thirty-two
days thereafter, May 18, 1893, whereby the defendant suf-
fered damages in the sum of $1,600, at $50 per day that said
boat was delayed; further, that it was delayed four days
more at Charlevoix before being delivered to the defendant,
to its damage of $200, and also one day at Detour, to its
damage in the sum of $50. For a further and separate coun-
terclaim, defendant claimed that plaintiff was indebted to
it in the sum of $100, paid by the defendant for a tug to get
the said boat off St. Martin's Reef, where the same had been
run ashore through the failure and neglect of the plaintiff
to perform its contract, and for the further sum of $11, for
moneys paid by the defendant at the special instance and
request of the plaintiff in moving said boat to the railroad
dock at Sheboygan, and pumping up its boiler. The de-

Manistee Iron Works Co. vs. Shores Lumber Co.

fendant alleged a further counterclaim for the failure and neglect of the plaintiff to perform its work in the contract specified in a good and workmanlike manner, to its damage in the sum of $2,500; the said claims amounting in all to $4,461, for which it demanded judgment.

The plaintiff replied to said counterclaims, denying the same, and alleging that it was delayed in the commencement and completion of the said contract by the failure and neglect of the defendant to deliver said barge at the time it was agreed upon, and to have the same free from ice and water; that defendant delayed the same a long time, and, when delivered, the barge was so filled with ice and water that plaintiff was put to great expense in removing the same, and it was thereby delayed in the completion of its said contract for thirty-two days, so that the defendant became indebted therefor in the sum of $1,600, being $50 per day; and the plaintiff alleged that the contract was completed and accepted May 16, 1893.

There was a special verdict, in substance as follows: (1) The contract price for doing the work provided for in the contract was $6,340. (2) The agreed price for removing the old crank shaft and rod, and placing new one in the barge mentioned, was $475. (3) There had been paid on said contract by plaintiff to defendant $5,000. (4) The plaintiff knew the condition that said barge was in at the time of making said contract. (5) The defendant did not deliver the barge at Sheboygan in a reasonably good condition. (6) The defendant did not deliver said barge at Sheboygan within a reasonable time after the contract was made. (7) The plaintiff was delayed by reason of defendant's delivering the barge in such bad condition twenty days. (8) It was not any part of plaintiff's contract to put in valve-stem guide which broke soon after said barge left Sheboygan. (9) Said barge was necessarily delayed by the breaking of said valve-stem guide four days. (10) The reasonable value of the use of said barge,

with her crew and equipment, was $100 per day. (11) Said barge was delayed after April 15, 1893, at Sheboygan, by plaintiff's failure to complete said work, thirty-one days. (12) The reasonable value of said barge per day without her crew was $40.50. (13) The plaintiff performed its part of said contract in a good and workmanlike manner. (15) The plaintiff's extra work and materials were reasonably worth $88.05. (16) The plaintiff is indebted to the defendant in the sum of $6, paid by it at plaintiff's request for moving said barge to the railroad dock at Sheboygan. The first three findings were by the court.

The plaintiff moved for judgment upon the special verdict for $1,457.55, with interest from May 18, 1893; that is to say: For the contract price, $6,340; for removing the old crank shaft and rod, etc., $475; and for extra work, $88.05,— amounting to $6,903.05; deducting $5,000 paid, leaving a balance of $1,903.05; deducting, also, from this the value of the barge per day, at $40.50, for eleven days, $445.50, leaving the said sum of $1,457.55. The defendant at the same time moved that findings Nos. 5 and 7 be stricken out for immateriality, and that the eighth finding be stricken out and answered by the court, on the ground that it involved a question of law for the court and not of fact for the jury. The defendant also moved the court for a judgment on such verdict in favor of the defendant, and against the plaintiff, for $19.42, with costs, etc. The court struck out findings Nos. 5 and 7 as immaterial and irrelevant, and changed the eighth answer from a negative answer to an affirmative one, and changed the twelfth finding from $40.50 to $50, for the reason that, under the contract and the undisputed evidence, such should have been the findings. The court made an order sustaining the defendant's motion, and for judgment in its favor for $19.42 for which judgment was given against the plaintiff, with costs, etc. From this judgment the plaintiff appealed.

For the appellant there was a brief by *Lamoreux, Glea-son, Shea & Wright*, attorneys, and *Smurthwaite & Fowler*, of counsel, and oral argument by *E. F. Gleason*. They argued, among other things, that the $50 "fine" for each day's delay could not be upheld as liquidated damages. It was a penalty pure and simple, not only as a matter of law but made so by the express terms of the contract, and therefore for any delay, if there was any, caused by the plaintiff's negligence the defendant could only recover the actual damages sustained, and in this case that would be a fair rental value of the boat unequipped. *Pierce v. Jung*, 10 Wis. 30; *Fitzpatrick v. Cottingham*, 14 id. 219; *Laubenheimer v. Mann*, 19 id. 519; *Yenner v. Hammond*, 36 id. 277; *Lyman v. Babcock*, 40 id. 503; *Dullaghan v. Fitch*, 42 id. 679; 1 Suth. Dam. 478, 489; *Colwell v. Lawrence*, 38 N. Y. 71; *Hill v. Lawrence*, 109 Ind. 564; *Brown v. Foster*, 51 Pa. St. 165; *Brownell & Co. v. Chapman*, 84 Iowa, 504.

For the respondent there was a brief by *Sanborn, Dufur & O'Keefe*, and oral argument by *A. W. Sanborn*. They contended, *inter alia*, that it is evident from the whole contract and surrounding circumstances that this was no fine or penalty. It was an agreement as to the rental value of the boat, made as much for the protection of the plaintiff as for the defendant. It was clearly the intent of the parties to fix this sum as liquidated damages, and the use of the word "fine" as it is used in the contract is of but little force in determining its meaning. *Yenner v. Hammond*, 36 Wis. 282; *Lyman v. Babcock*, 40 id. 517; *Hall v. Crowley*, 5 Allen, 304; *Folsom v. McDonough*, 6 Cush. 208; *Ward v. Hudson River B. Co.* 5 N. Y. Supp. 319, 125 N. Y. 230; *Worrell v. McClinaghan*, 5 Strob. 115; *Curtis v. Brewer*, 17 Pick. 513. See, also, *Harmony v. Bingham*, 12 N. Y. 100; *Young v. White*, 5 Watts, 460; *Sanford v. First Nat. Bank*, 63 N. W. Rep. 459; *Standard B. F. Co. v. Breed*, 163 Mass. 10; *De Graff, V. & Co. v. Wickham*, 89 Iowa, 720; *Monmouth P. Asso. v. Wallis I. Works*, 55 N. J. Law, 132.

PINNEY, J.  1. At the time the contract was made the barge was lying at Chicago in a leaky condition and had considerable water in its hold covered with thin ice.  The work contracted for was to be done at Sheboygan, to which place, it is conceded, the defendant was to take the barge; and, in the absence of any special agreement, it may be assumed that it was the duty of the defendant to deliver it at the latter place within a reasonable time, for that purpose. There was evidence tending to show that the parties made a subsequent agreement by parol, as they might do, as to the time of delivery. *Bannon v. C. Aultman & Co.* 80 Wis. 307. The plaintiff contends that it was to be delivered within a day or two after January 1st, and the defendant that it was to be delivered any time within two weeks thereafter, and there was evidence justifying the submission of the question of time of delivery, in this view, to the jury.  But the attention of the court does not appear to have been called to the question, and it instructed the jury that "it was the duty of the defendant to deliver the barge at Sheboygan within a reasonable time and in a suitable condition, all things considered, for plaintiff to prosecute its work without unnecessary delay."  The plaintiff's agent saw the barge at Chicago when the contract was made, and knew its situation and condition, and it appears that at that time the making of proper measurements essential to the projected work was very difficult, and in fact impracticable.  The barge reached Sheboygan about the 9th of January; and the evidence tended to show that it was then pretty well filled with ice and water, its leakage was much increased, and that there was sixteen inches or more of ice above the crank shaft; that the principal measurements could not be made until it was put in the dry dock, and the ice and water removed; and that, for various reasons, it did not get into the dry dock, where considerable work was to be done on it in building over and repairing the hull and other portions, until about

Manistee Iron Works Co. vs. Shores Lumber Co.

thirty-five days after its arrival. It appeared that the defendant, on the same day, and before it made the contract with the plaintiff, made a contract for rebuilding in part and repairing the hull and other parts of the barge, with Rieboldt, Wolter & Co., of Sheboygan, ship carpenters and builders, who had the only dry dock at that place, for $4,200; and that the plaintiff's agent, when he made the contract in suit, knew of that contract, and, by one of its provisions, Rieboldt, Wolter & Co. were to dry dock the barge; and the contract in suit provided that the plaintiff was " to have all machinery in boat, so that carpenters can complete cabins by April 1, 1893."

What is implied in an express contract is as much a part of it as what is expressed. It is a well-known rule of law that every contract must be construed as if those terms which the law will imply were expressly introduced into it (*Whincup v. Hughes*, L. R. 6 C. P. 78, 84; *Donahoe v. Kettell*, 1 Cliff. 144; *U. S. v. Babbit*, 1 Black, 61); that, where a contract is so framed that it binds the party contracting to do the act, it will imply a correlative obligation on the party to do what is necessary on his part to enable the party so contracting to fulfill his part of the contract (*Hudson Canal Co. v. Pennsylvania Coal Co.* 8 Wall. 288; *Churchward v. Reg.* L. R. 1 Q. B. 195; *Currier v. B. & M. Railroad*, 34 N. H. 498).

The defendant was bound, as we have seen, to deliver the barge at Sheboygan, so that the work contracted for by the plaintiff could be there performed; and we think it is fairly to be implied that the barge should be delivered there in a reasonably suitable condition to enable the plaintiff to perform its contract, and that the charge of the circuit judge in this respect was correct. If the barge had been sunk in the river at Chicago at the time the contract was made, or had sunk in the harbor at Sheboygan after its arrival, it could not, we think, be maintained that the plaintiff would be

bound to raise it, in either case, and put it in such a situation that the performance of its contract would have been practicable; and the like conclusion follows from the actual circumstances of the present case. The plaintiff ought not to be charged, as it was by the judgment, with the consequences of delay in performing the contract for which the defendant was responsible. In *Churchward v. Reg., supra,* COCKBURN, C. J., said that, "in all these instances where a contract is silent, the court or jury who are called upon to imply an obligation on the other side which does not appear in the terms of the contract must take great care that they do not make the contract speak where it was intentionally silent, and, above all, that they do not make it speak entirely contrary to what, as may be gathered from the whole terms and tenor of the contract, was the intention of the parties. This I take to be a sound and safe rule of construction with regard to implied covenants and agreements, which are not expressed in the contract." It was provided in the contract that the work was to be done at Sheboygan, and it was conceded that it was the duty of the defendant to take the barge to that place, although the contract was entirely silent on that point; and we consider the implication is equally clear that it was the duty of the defendant to deliver or place it there in a reasonably suitable situation or condition to enable the plaintiff to perform its contract. The sixth question should have been framed, in respect to the time of the delivery of the barge, as above indicated, and the seventh, as framed, was substantially correct. It should be left to the jury, in substance, to find how long the plaintiff was delayed by reason of the failure of the defendant to deliver the barge at Sheboygan in a reasonably proper condition to enable it to perform its contract. The questions above indicated are material, and there was evidence which required them to go to the jury, although much of it was erroneously excluded. The court erred in

setting aside the fifth and seventh findings, and by treating them as immaterial, and thus allowing the defendant damages for the entire delay of thirty-one days in performing the plaintiff's contract.

2. The jury found in the negative upon the question whether the putting in of the "valve-stem guide," which broke soon after the barge left Sheboygan, was a part of the plaintiff's·contract; but the court struck out this finding and substituted an affirmative one in its place. The barge had a low-pressure engine, and the defendant wanted it made both high and low pressure,— compounded; and the work of doing this required the construction of the high-pressure parts, and attaching them above· and to the low-pressure machinery already in the barge. It would seem from the evidence that the valve-stem guide in question was a part of the low-pressure engine, and that all the work in compounding the engine was above it. The contract does not call for the construction of a valve-stem guide, unless it comes within the terms of "necessary connections to work high-pressure valves." The valve-stem guide that broke belonged to and had been used in the low-pressure engine, and it became also a necessary device in working the new or high-pressure engine; but whether it was a *necessary connection* to work the high-pressure engine which the contract required should be replaced by a new one by the plaintiff is not so entirely clear as to make the question one of law for the court. The valve-stem guide appears to be near the bottom of the old or low-pressure engine, and the valve-stem rod of the new high-pressure engine is, in fact, connected with it by a block or link near the connection of the old with the new engine, and it is claimed that this link or block was the only connection required of them by the contract. While the valve-stem guide was essential to the use of the old engine by itself, and when the new engine was built and the valve rods thus connected it became a device for the operation of the new

Manistee Iron Works Co. vs. Shores Lumber Co.

engine, still it does not therefore follow that it was a "necessary connection," which the plaintiff was required by the contract to make new. The evidence is not entirely clear upon the subject, and the meaning of the contract in this respect is, under these circumstances, a question for the jury, depending upon the evidence of machinists and experts. The court therefore erred in thus changing the verdict. *Sheehy v. Duffy,* 89 Wis. 6; *Menominee River S. & D. Co. v. M. & N. R. Co.* 91 Wis. 447. The delay of four days of the boat, crew, etc., charged against the plaintiff, at the rate of $100 per day, was occasioned by the breaking of the old valve-stem guide, for which it does not appear that the plaintiff was in any way responsible. This erroneous charge of $400 results from the ruling of court that, as a matter of law, the plaintiff was bound by the contract to have constructed a new valve-stem guide.

3. The stipulation in the contract for the payment of $50 per day for each day the use of the boat was delayed by failure of the plaintiff to finish its work, denominated a "fine" in a subsequent provision of the contract, is, we think, a stipulation for the payment of liquidated damages, and is not a penalty, under which the fair rental value *per diem* of the barge without its crew would become a matter of proof. We think the force of the word "*fine*" is overborne by the general purport of the contract and its subject-matter. The evidence shows that the use of the barge *per diem* during the season of navigation was not disproportionate to the sum agreed on, but was about $50 per day; and, although called a "fine," the parties seem to have agreed upon this compensation for each day's delay, to obviate the necessity or difficulty of proof. The sum is really named as compensation for each day's failure of the plaintiff to complete an entire job, and the case falls within the rule stated in *Yenner v. Hammond,* 36 Wis. 277; *Lyman v. Bab-*

*cock,* 40 Wis. 517; *Curtis v. Brewer,* 17 Pick. 513; *Hall v. Crowley,* 5 Allen, 304; *Young v. White,* 5 Watts, 460.

For these reasons the judgment of the circuit court is erroneous.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.