FRED RAPP, Appellant, v. H. LINEBARGER & SON and LEWIS LINEBARGER, Appellees.

Contracts: UNCERTAINTY: EXTRINSIC EVIDENCE: CONSIDERATION. Where a contract by its terms is uncertain the intention of the parties becomes material, and extrinsic evidence of the facts and circumstances leading up to the transaction is admissible to explain the intention and meaning of the parties.

In this action the defendants who were majority owners of certain bank stock sold the same to different parties, basing its value upon assets of the bank, among which were certain notes of doubtful value. To indemnify the purchasers against loss the defendants, as first parties, executed an agreement with plaintiff and the cashier of the bank as second parties, which provided in substance that the defendants had sold to the plaintiff and others the stock in question, in which they agreed to be liable for any loss which might occur because of inability to collect the notes in question. *Held,* that although the contract was uncertain, yet in view of the circumstances surrounding the transaction it is upheld on the ground that it was an undertaking to protect the purchasers and is enforceable, and the consideration of the sale gave it validity.

**Same:** CONSTRUCTION OF CONTRACTS. As a general rule a contract is to be construed by the court, but where extrinsic evidence is required and received to aid in its construction and the same is controverted or capable of different inferences, it then becomes a question for the jury.

**Same:** ACTIONS: PARTIES. A party who has no real interest in the subject matter of a contract but is only a representative of other parties to the instrument need not be joined in an action brought thereon by such other parties.

**Same.** Where the party suing upon a contract has an independent interest therein sufficient to support a cause of action on his own behalf, an objection that he has no proper assignment of the causes of action from others for whom he is also suing is not fatal to the action; since other parties necessary to relieve defendant from a multiplicity of suits may be brought in.

**Same:** ENFORCEMENT. It is the duty of courts to enforce contracts fairly made and not to annul or disregard them unless required to do so by some well established and imperative rule of law.

*Appeal from Union District Court.*—HON. H. M. TOWNER, Judge.

MONDAY, NOVEMBER 21, 1910.

THE opinion sufficiently states the case. Judgment *reversed.*

*Wade, Dutcher & Davis,* for appellant.

*Milton Remley,* for appellees.

WEAVER, J.—Plaintiff brings this action at law stating his claim and cause of action substantially as follows:  On and prior to June 10, 1893 the Oxford State Bank was a corporation organized under the laws of this state with banking powers and doing business at Oxford.  It had a paid-up capital stock of $25,000, divided into two hundred and fifty shares of $100 each, and one hundred and forty of said shares, representing 14/25 of said stock, were owned and held by the defendants herein, Lewis Linebarger and H. Linebarger & Son.  On the date named defendants sold and transferred their said shares of stock in said bank in varying amounts to seventeen different persons as follows:

| | | |
|---|---|---|
| To N. Crow | 5 | shares |
| " Jas. Flannery | 10 | " |
| " Joe Yokum | 10 | " |
| " M. Ackerman | 4 | " |
| " H. Linebarger | 3 | " |
| " C. C. Oakes | 10 | " |
| " E. A. Doty | 10 | " |
| " E. D. Jones | 3 | " |
| " M. McDonough | 5 | " |
| " L. R. Wolfe | 20 | " |
| " James Burns | 20 | " |
| " J. P. Oakes | 10 | " |
| " Sarah Burnett | 5 | " |
| " W. G. Williams | 5 | " |
| " Jas. Stratton | 5 | " |
| " Fred Rapp | 5 | " |
| " Carl Gergenheimer | 10 | " |

At the time of said sale, Lewis Linebarger was its president, Fred Rapp vice president, and H. N. Linebarger cashier.  The sale of said stock was effected at the agreed price or book value of $125 per share.  Among the bills receivable of the bank at the date of the sale were two promissory notes representing the aggregate principal sum

of $3,500 and accrued interest thereon, which notes were treated by the parties as being good and collectible in computing and fixing the value of said shares of stock. As a matter of fact, the notes were of doubtful value, as was then known by the defedants and Rapp, the vice-president. This fact was not revealed to the purchasers of the stock, but, for the purpose of protecting such purchasers from any loss which they might sustain if said notes were not collected in full, the defendants made and delivered to Fred Rapp, vice-president, and H. N. Linebarger, cashier, a written obligation or instrument in the following form:

Articles of agreement, made and entered into this 10th day of June, 1893, by and between H. Linebarger & Son and Lewis Linebarger, parties of the first part, and Fred Rapp, vice president, and H. N. Linebarger, cashier of the Oxford State Bank, parties of the second part, witnesseth: That the said first parties have this day sold to Jas. Burns, L. R. Wolfe, Fred Rapp, J. P. Oakes, James Sherlock and others, one hundred forty (140) shares of the capital stock of the Oxford State Bank, and they, the said first parties, H. Linebarger & Son and Lewis Linebarger, guarantee to the said purchasers of said stock, or their successors, should all or any of them sell said stock, fourteen twenty-fifths (14/25) of the loss if any occur to said second parties caused by the said bank losing any or all of two certain promissory notes or any part thereof, belonging to the said Oxford State Bank described as follows and indorsed by the Northwestern Guaranty Loan Co. of Minneapolis, Minn. (said corporation being in the hands of a receiver); one dated April 19, 1893, for $1,000 due four months after date without grace, signed by A. B. Morgan and payable at American Exchange National Bank of New York City, and known as discount number 14,456 N. W. Guar. Loan number 10,002; one of $2,500, dated December 16, 1892, due five months after date without grace, signed by Edward H. Carroll and payable at American Exchange National Bank of New York City. Entered upon the books of said Oxford State Bank and known as discount number 13,423. N. W. Guar. Loan Co. number 8,577. The said second parties agreeing to wait for pay-

ment until the affairs of the Northwestern Guaranty Loan Co. have been fully settled. The said second parties agree to transfer to said first parties fourteen twenty-fifths (14/25) interest in said claims after first parties have been paid the said 14/25 of loss, if any, of said claims to second parties. The officers of the said Oxford State Bank agree to use due diligence in the collection of the above-described notes. Dated at Oxford, Iowa, this 10th day of June, 1893, H. Linebarger & Son. Fred Rapp, V.-P. Lewis Linebarger. H. N. Linebarger, Cashier.

It is further alleged that though due diligence has been exercised, it has been found impracticable to make collection of said notes, whereby loss has occurred to the purchasers of said stock, all of whom have assigned their claims arising upon said obligation to the plaintiff. Upon these allegations he seeks to recover an amount equal to the 14/25 of the sum remaining due upon said worthless notes. To this petition the defendants demurred upon grounds which may be abbreviated as follows: (1) The alleged written contract is too vague, uncertain, and indefinite to be capable of legal enforcement. (2) There is a defect of parties, in that H. N. Linebarger, who is named in the contract, is made neither plaintiff nor defendant in this proceeding. (3) The contract is to pay losses incurred by the "second parties" named in the writing, and no loss to them is alleged. (4) No consideration is shown for the agreement. The writing shows affirmatively that there was no consideration. (5) There is shown no privity between the parties of the second part and the purchasers of the stock. The demurrer being sustained, the plaintiff elected to stand on his pleading, and, judgment being entered against him for costs, he appeals.

I. While none of the grounds of demurrer is abandoned on appeal, chief attention is given by counsel to the proposition that the contract in suit is void for uncertainty. It is not to be denied that the instrument is inartistically prepared and very obscurely worded, but when read in the

light of the facts and circumstances attending its execution alleged in the petition and admitted by the demurrer, we incline to the view that its purpose and legal effect may be ascertained. The mere fact that the language of a contract, unaided by extrinsic evidence of any kind, is too uncertain for satisfactory interpretation, does not necessarily dispose of the question of its enforceable quality. The general doctrine in this respect has been stated as follows: "The parties to a contract choose words to express their intention in view of all the surrounding circumstances. It is practically impossible to state these facts in the contract, and it is rarely if ever attempted. The court which construes the contract must therefore either disregard all the material facts which led the parties to express their intention as they did, or else admit extrinsic evidence of the surrounding facts and circumstances. In this dilemma the courts have chosen the latter alternative. It is a recognized rule of construction that the court will place itself in the position of the parties who made the contract as nearly as can be done by admitting evidence of surrounding facts and circumstances, the nature of the subject matter, the relation of the parties to the contract, and the objects sought to be accomplished by the contract." 2 Page on Contracts, section 1123. This court has frequently recognized the soundness of the rule as here stated. Thus it has been said: "The intention of the parties may be ascertained by evidence of extrinsic circumstances which surround the transaction; the court thereby placing itself in the situation of the contracting parties whose language it is called upon to construe. The circumstances and situation of the parties thus become a medium through which their intentions may be discovered." *Corbett v. Berryhill,* 29 Iowa, 160. In the more recent case of *Wallace v. Ryan,* 93 Iowa, 115, the rule is restated as follows: "A contract will not be held void for uncertainty unless it is incurably

*[margin note: I. CONTRACTS: uncertainty: extrinsic evidence: consideration.]*

uncertain by reason of a patent ambiguity or otherwise. If it can be cured by permissible parol proof, it will be treated as valid, and enforced. The law will not stop in its endeavor to remove uncertainty until it is found that the contract must be set aside and another one substituted. It will cast all the light to be gathered from the collation of the words used and the contemporaneous facts which admissible extrinsic testimony establishes upon the contract, and, if these make the intention and meaning of the parties in using the words selected by them in the contract plain, it will be enforced." To the same general effect, see *Field v. Schricher,* 14 Iowa, 119; *Shuler v. Dutton,* 75 Iowa, 155; *Pratt v. Prouty,* 104 Iowa, 419; *Collins v. Phillips,* 91 Iowa, 210; *Allen's Estate,* 116 Iowa, 697; *Clinton v. Shugart,* 126 Iowa, 179; *Sinclair v. Surety Co.,* 132 Iowa, 549. For a collection of cases in point from other jurisdictions, see note 2 Page on Contracts, section 1123.

Applying these rules to the contract here in controversy, and looking at the facts admitted by the demurrer, the parties are revealed in the following situation. The defendants, owning a controlling interest in the bank, were desirous of selling their stock and had arranged to dispose of their shares in varying proportions to seventeen different purchasers. The value of the shares depended, of course, upon the value or amount of the net assets of the bank, and in arriving at such value for the purposes of the sale the two promissory notes in question were treated as being good and collectible. Defendants knew that these notes were of little value and likely to result in loss to the bank and ultimate loss to the stockholders; but that fact was unknown to any of the purchasers of the stock except Rapp, the vice president, who took five of the shares. It was not yet certain that the notes would prove a total loss, for the corporation which had indorsed them was then in the hands of a receiver, and how much, if anything, would be realized upon the bank's claim was unknown. It is manifest there-

fore that, had the transaction in which these sales of stock were made been closed without any provision or arrangement for the protection of the purchasers against loss resulting from these undisclosed conditions, and the value of their stock was thereby impaired, they would have a just claim, in morals if not in law, to indemnity at the hands of the defendants. The allegation of the petition is, in effect, that defendants recognized that they were bound in good faith to protect their purchasers against this contingency, and to that end and for that purpose executed the instrument in suit. With these facts in mind, we think it by no means impossible to construe the contract as a valid undertaking to accomplish the purpose then in the minds of the parties; that is, to make good to the purchasers whatever loss might accrue to them from the more or less worthless character of the notes.

Had the writing in express words named all of the several purchasers as obligees, its validity as an enforceable contract would be open to no reasonable doubt. So, too, had the writing expressly described Rapp and Linebarger "parties of the second part" as trustee for the benefit of all the purchasers, little, if any, difficulty would be found in upholding the right of the said purchasers to the benefit of the obligation thus assumed by the defendants. But, even in the absence of express words, is not such the reasonably clear and natural effect of the language actually employed? It does expressly recite the sale of the shares to the several purchasers and the possibility of loss to the latter by reason of the doubtful character of the notes, and then proceeds to guarantee said purchasers and their successors in the ownership of said shares against loss on account of said notes to an amount equal to 14/25 of the shrinkage thus resulting in the assets of the bank. It is hardly necessary to say that the trust or representative character of the agreement is not necessarily negatived by the failure to describe the parties

of the second part as trustees, or to say in so many words that the agreement was made for the benefit of all the purchasers of the stock; but such character will be impressed upon it if, upon a fair construction of the language actually employed, in the light of all the surrounding facts and circumstances, such appears to have been the intention with which the instrument was made and delivered. There would be little trouble in so interpreting this writing except for the awkward manner in which the words "parties of the second part" and "second parties" have been used by the scrivener. The preamble names Fred Rapp, vice president, and H. N. Linebarger, cashier, as "parties of the second part." Later in the body of the instrument, defendants, after reciting the sale of their stock, are made to "guarantee to the said purchasers . . . fourteen twenty-fifths of the loss, if any, occur to second parties, caused by the bank losing any or all" of the notes in question. In a later clause the "second parties" undertake to wait for payment until the affairs of the guaranty and loan company (the indorser) have been fully settled, and further agree that when such payment has been made to transfer or assign to the defendants the claim against the makers and indorsers of the notes. If we hold, as indicated, that Fred Rapp and H. N. Linebarger, as parties to said contract, occupy a representative capacity, and that they took the obligation of the defendants for the benefit of all the purchasers of the stock, this confusion in terms becomes more apparent than real. These men are "parties of the second part" in form, but the purchasers of the stock whom they represent are the "second parties" in right, and it is perhaps not unnatural that a nonprofessional scrivener in preparing the paper should be more or less inexact in the form of his expression, and that, while naming Rapp and Linebarger as parties of the second part in the preamble, he should in another place use the term "second parties" as descrip-

tive of the persons whom they represent. We conclude, therefore, that, reading the contract as a whole, in the light afforded by the circumstances under which it was executed and the purpose it was apparently intended to subserve, there is no insurmountable obscurity or uncertainty in its terms, and that the petition of the plaintiff stated a cause of action.

There is another rule of law which is not without its bearing upon this feature of the case. While, generally speaking, the construction of a contract is for the court alone, the rule is not without its exceptions.

2. SAME: construction of contracts.

One of these exceptions is recognized in certain cases where resort is had to extrinsic circumstances for aid in the construction of a contract otherwise doubtful or ambiguous. If the extrinsic evidence is undisputed, the construction falls within the general rule, and the court must construe the contract; but if the evidence be controverted, or different inference may be drawn therefrom, then its construction becomes a jury question. 2 Page on Contracts, section 1129; *Etting v. Bank,* 24 U. S. 59 (6 L. Ed. 419); *Winter v. Norton,* 1 Or. 42; *Iron Works v. Shores,* 92 Wis. 21 (65 N. W. 863); *Roberts v. Bonaparte,* 73 Md. 200 (20 Atl. 918, 10 L. R. A. 689); *Bank v. Dana,* 79 N. Y. 116.

II. The foregoing sufficiently disposes of all the points made in the demurrer to the petition, unless it be as to the effect of the failure of plaintiff to make H. N.

3. SAME: actions: parties.

Linebarger a party to the action. The demurrer concedes in effect that said Linebarger has no interest whatever in the matter in dispute, and that he became a party to the written agreement in a representative capacity only. The real and only parties in interest are defendants, who are the obligors in the undertaking and the purchasers of their shares of stock, all of whom are in court in person or by the assignee of their interest in said contract. Code, section 3459.

Objection is also raised to the sufficiency of some of the assignments made by stockholders to the plaintiff; but we think the point thus stated does not go to the entire cause of action pleaded.  Plaintiff was him-

4. SAME.     self a purchaser of some of the stock, and as such, as well as assignee of some, if not all, of the other beneficiaries of defendants' agreement, to say nothing of his relation as a representative of all the holders of said stock, he had the right to come into court and ask the enforcement of the obligation. If other parties be required in order to make the remedy complete and to relieve the defendants from liability to other litigation over the same subject matter, the difficulty is easily remediable by bringing them into the action as already suggested.

Defendants concede that they executed and delivered the paper on which the action is based.  It must be presumed that they intended thereby to agree to something. Mature men of business experience acting honorably and fairly, as we must presume defendants to have acted in this transaction, do not ordinarily put their names to contracts without intending to bind themselves to some act or course of conduct on which he to whom or for whom it was given may rely and for the performance of which they will hold themselves responsible.  It is possible, of course, that an agreement may be so grossly obscure and uncertain that, when tested by all the rules of construction, the real meaning and purpose of the parties can not be unraveled; but instances of this nature are very rare, and the courts are always reluctant to uphold such an objection.

It is the duty of the courts to enforce contracts fairly made, and not to annul or disregard them unless required to do so by some well-established and imperative rule of law.  We find none which requires us to

5. SAME: enforcement.     relieve the defendants from answering the claim which plaintiff makes against them.  Their agree-

ment to indemnify the purchasers of their stock against loss of the kind there mentioned bears upon its face no apparent invalidity; but, if there be any defence to the plaintiff's claim, the opportunity is open to them to answer and make an issue for trial in which all parties can be heard upon the merits of the dispute.

It follows, from what we have said, that the demurrer to the petition should have been overruled. The judgment · of the district court will be reversed, and the cause remanded for further proceedings in harmony with the views here expressed.—*Reversed.*