STATE EX REL. CITY OF MILWAUKEE, Appellant, vs. MIL-
WAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Re-
pondent.

*March 19—May 1, 1914.*

*Street railways: Franchise ordinance: Construction: Contractual pro-*
*visions: Municipal power of regulation: Duty to keep railway*
*zone in repair: Paving and repaving: Mandamus: Sufficiency of*
*return.*

1. In case of doubt as to the nature of a provision imposing a duty
   upon a street railway company under a franchise ordinance en-
   acted pursuant to sec. 1862, Stats., it is to be construed as a reg-
   ulation rather than a contract.
2. Sec. 1862, Stats., authorizing a city to grant the use of the streets
   for street railway purposes, and providing that "every such road
   shall . . . be subject to such reasonable rules and regulations
   . . . as the proper municipal authorities may by ordinance,
   from time to time, prescribe," affects the construction of an or-
   dinance enacted pursuant thereto to the same extent as if it
   were expressly written into the ordinance.
3. In regulating the repair and improvement of its streets a city
   exercises a legislative function, and it cannot, without express
   authority from the legislature to do so, contract away its legis-
   lative power.
4. The specification in a franchise ordinance of the portion of the
   street which must be kept in repair by a street railway company
   may, perhaps, be the subject of contract, but a provision desig-
   nating the kind of repair cannot be. The former relates to a
   matter in which permanence and unchanging policy are permis-
   sible; the latter to an exercise of legislative power in a matter
   which is necessarily subject to change from time to time.
5. Practical construction by the city of a provision in the franchise
   ordinance regulating the mode of repair does not preclude it
   from prescribing new regulations by ordinance.
6. The obligation imposed by a street railway franchise to keep a
   described portion of the street in good repair carries with it the
   duty to pave such portion when, having regard to the paving
   upon contiguous portions of the same street, paving is reason-
   ably necessary to constitute good repair.
7. A specification in such franchise of the use of certain kinds of
   paving materials for keeping the prescribed zone in repair nec-
   essarily implies repair by paving.
8. A provision in such franchise that the street railway company

shall keep in repair prescribed spaces between and beside the rails "with the same material as the city shall have last used to pave or repave these spaces and the street previous to such repairs," is not contractual but is subject to the paramount provision that the company must keep the street in good repair and to the continuing power of regulation contained in sec. 1862, Stats.

9. The words "same material" in such provision do not mean the identical blocks, brick, or asphalt, but the same kind of material, *i. e.* the same style of pavement.

10. Where a street, originally paved by the city from curb to curb with one style of pavement, has been repaved, outside of the railway zone, with a different style of pavement, the right of the street railway company to use the old style of pavement in making repairs depends upon whether by such use the zone in question is or can be kept in good repair.

11. The city ordinarily has the right to determine, within reasonable limits, what constitutes good repair; and it cannot deprive itself of that power.

12. Where it is sought to compel a street railway company to repair the railway zone by repaving it with a new style of pavement, which has been laid by the city on the rest of the street, the common council, in the exercise of the power of regulation conferred by sec. 1862, Stats., should by ordinance (or perhaps by a resolution legally equivalent to an ordinance) prescribe the duty of the company in that respect.

13. In a proceeding by *mandamus* to compel such repaving, if the relation does not plead any lawful change in the provision of the original franchise ordinance above quoted, a return averring the company's readiness to put the zone in question in good repair with the materials last used by the city to pave the same, as required by that provision, states a good defense, it being presumed in support thereof that it is possible in that manner to create a condition of good repair.

WINSLOW, C. J., BARNES, J., and VINJE, J., dissent.

APPEAL from an order of the circuit court for Milwaukee county: F. C. ESCHWEILER, Circuit Judge. *Affirmed.*

The appeal is from an order overruling a demurrer to a return to an alternative writ of *mandamus.*

For the appellant there was a brief by *Daniel W. Hoan,* city attorney, and *Clifton Williams,* assistant city attorney, and oral argument by *Mr. Williams.*

For the respondent there was a brief by *Miller, Mack & Fairchild,* and oral argument by *E. S. Mack.*

TIMLIN, J.  The relation for the alternative writ averred that Lisbon avenue had been paved with a cedar block pavement resting upon planks laid on a sand foundation prior to its occupation by respondent railway.  This cedar block pavement extended from curb to curb and the full length of that portion of Lisbon avenue in question.  Recently the city of *Milwaukee* paved the portion of Lisbon avenue between Twenty-fourth and Twenty-seventh streets and between the curb and a line one foot from the rail nearest to such curb with asphalt pavement upon a concrete foundation.  The former wooden block pavement in the street between the railway tracks and one foot on either side of the outside rail is worn, dilapidated, and in such a condition that the street is unsafe.  No ordinance or other action of the common council or other city authority, except the original franchise ordinance issued to the respondent pursuant to sec. 1862, Stats., is expressly averred.  Sec. 2 of that ordinance provides:

"The track of the said railway shall be of the gauge of not more nor less than four feet eight and one-half inches, and shall not be elevated above nor depressed below the established grade of the street.  It shall be laid with modern improved rails, as approved by the board of public works, and in such manner that carriages and other vehicles can easily and freely cross said streets at any and all points and in any and all directions, without obstruction, and shall be laid as near the center of said streets and as near together as practicable.  It shall be the duty of said railway company at all times to keep in good repair the roadway between the rails and for one foot on the outside of each rail as laid, and the space between the two inside rails of its double tracks with the same material as the city shall have last used to pave or repave these spaces and the street previous to such repairs, unless the said railway company and board of public works of said city shall agree upon some other material and said company shall then use the material agreed upon."

The appellant seeks to compel the respondent to keep in good repair by paving the street between its rails and for one foot on the outside of each rail as laid and the space between the two inside rails of its double tracks with asphalt pavement upon a concrete foundation. The respondent by way of return to the alternative writ avers, among other things, "that at all times since its tracks were laid in said portion of said street it has kept, and is ready and willing to continue to keep, the roadway in the portion thereof described in paragraph 4 hereof in good repair with the materials last used by said city to pave the same, or with such materials as said city may at any time use to pave or repave the same, as in and by said ordinance required."

The recent cases of *State ex rel. Milwaukee v. Milwaukee E. R. & L. Co.* 151 Wis. 520, 139 N. W. 396, with authorities cited and approved therein, and *Madison v. Southern Wis. R. Co.* 156 Wis. 352, 146 N. W. 492, with authorities cited and approved therein, leave little room for discussion. The case first above referred to affects the quoted section of the ordinance in detail and will be hereinafter noticed in that way. The case last above cited affects fundamentally the whole theory of interpretation upon which respondent's argument is based. For, if we follow the case last referred to, we approach this section of the ordinance, so far as the same relates to the manner of repair, as a regulation, while if we follow the respondent's argument we approach this whole section of the ordinance as a contract. Sec. 1862, Stats., under and pursuant to which the ordinance in question was enacted, provides, among other things, that any municipal corporation may grant to any corporation there described the use, upon such terms as the proper authorities shall determine, of any streets, etc., for street railway purposes. This is followed by the provision that "every such road shall be constructed upon the most approved plan and be subject to such reasonable rules and regulations . . . as the proper municipal authori-

ties may by ordinance, from time to time, prescribe." In case of doubt on this point the ordinance is to be construed as a regulation rather than a contract. *East Hartford v. Hartford B. Co.* 10 How. 511; *Goszler v. Georgetown,* 6 Wheat. 593, and cases in Rose's Notes; also *State ex rel. Ginn v. Wilson,* 121 Wis. 523, 99 N. W. 336, and cases there cited and followed.

But upon the point whether the provisions of the ordinance relating to the manner of repair are regulatory or contractual this case is not even doubtful. Similar provisions have already been construed to be merely regulatory in *Madison v. Southern Wis. R. Co., supra.* In *Freeport W. Co. v. Freeport,* 180 U. S. 587, 21 Sup. Ct. 493, the statute under consideration (Public Laws Ill. 1871, p. 259) conferred on the city council power to provide for a supply of water and to authorize any person or private corporation to construct and maintain the same at such rates as may be fixed by ordinance and for a period not exceeding thirty years. Here the words "fixed by ordinance" were found, but not the words "from time to time." Our statute omits the word "fixed," expressly refers to rules and regulations to which the corporation shall be subject, and provides that these rules and regulations be made by ordinance and from time to time. This presents a much stronger case against the view that this is a contract stipulation than did the case of *Freeport W. Co. v. Freeport, supra.* Our statute would stand as a statute authorizing regulation in this particular under the dissenting as well as under the prevailing opinion in the case last referred to. See, also, *Danville W. Co. v. Danville,* 180 U. S. 619, 21 Sup. Ct. 505, and *Mead v. Portland,* 200 U. S. 148, 26 Sup. Ct. 171.

This sec. 1862 affects the construction of the ordinance in question to the same extent as if it were expressly written into that ordinance. *Manistee I. W. Co. v. Shores L. Co.* 92 Wis. 21, 65 N. W. 863. And it is "as broad and compre-

hensive as language can make it." *State ex rel. Milwaukee v. Milwaukee E. R. & L. Co.* 144 Wis. 386, 397, 129 N. W. 623. It is not easy to see how this power of regulation could be in force with reference to sprinkling this zone, which sprinkling is not mentioned in the ordinance of 1900, and yet not in force with reference to the manner of repair of the zone, unless indeed we regard the method of repair first specified as an unalterable contract stipulation.

It is further well settled that in regulating the repair and improvement of streets the city is exercising a legislative function, and in performing such work a governmental duty is exercised by the city. Cases *supra* and *Bruhnke v. La Crosse,* 155 Wis. 485, 144 N. W. 1100, and cases cited; 1 Elliott, Roads & S. (3d ed.) § 619. A city cannot, without express authority from the legislature to do so, contract away its legislative power (cases *supra*), but here it appears that the state has given no such authority to the city and the city has not attempted to do so. The specification of that portion of the street which must be kept in good repair by the railway company is not a provision of the same nature as that which designates the kind of repair. The former relates to a matter in which permanence and unchanging policy are permissible, the latter to a matter in which change is at times indispensable and is always to be expected. The former relates to the division of burden between the city and the street railway company, and the latter relates to an exercise of legislative power by the city which cannot be exercised once for all time. The former might be the subject of contract, although that is not necessary to be decided here; the latter could not be the subject of contract unless the city should forego its legislative power of regulation or its continuing duty to regulate.

Another result following this view of the provisions of the ordinance in question relative to the mode of repair is that the question of practical construction urged by respondent's

counsel disappears. If this is a mere regulation, and if the city is authorized to regulate this mode of repair from time to time, and it requires a particular mode of repair in the instant case, it matters not how long or how often heretofore it neglected to designate or enforce repairs of this particular kind. Both *State ex rel. Milwaukee v. Milwaukee E. R. & L. Co.* 151 Wis. 520, 139 N. W. 396, and *Madison v. Southern Wis. R. Co.* 156 Wis. 352, 146 N. W. 492, with the authorities therein followed and approved, are authority for the saying that an obligation to keep a described portion of the street in good repair carries with it the duty to pave such portion when, having regard to the paving upon contiguous portions of the same street, paving is reasonably necessary to constitute good repair; or, in other words, when the paved street could not fairly be said to be in good repair unless such portion were also paved. Unless we are prepared to undo what has been done and to gainsay what has been said in the case first cited, we must start with the proposition that the obligation to keep in good repair ordinarily includes the duty to pave as well as to repave whenever necessary to satisfy the requirement of "good repair" found in the franchise ordinance, and, following the case second above cited, we might start with the proposition that the portion of sec. 2 of the ordinance in question contains not contractual stipulations but regulations by the city, made by it under the authority of sec. 1862, Stats., which may from time to time be altered by ordinance. The cases cited recognize that authorities may be found to the contrary of both these propositions, but select and follow those cases and rules which tend to uphold these propositions. Comparing the quoted sec. 2 of the ordinance of 1900 with sec. 4 of the ordinance of 1887, construed in *State ex rel. Milwaukee v. Milwaukee E. R. & L. Co., supra,* it seems apparent that they are substantially alike except as to the materials with which repair of the like zone should be made; and except that the latter does not mention paving,

while the former does, as will appear hereafter.    In the latter the zone in question is to be kept and maintained in good and thorough repair by use of the same material as that of which the street shall be composed at the time when such repairs shall be necessary.    In the former the like zone is to be at all times kept in good repair with the same material as the city shall have last used to pave or repave these spaces and the street previous to such repairs, unless, etc.    If the latter ordinance required the street railway to repair by paving, then the former section, *a fortiori,* so requires.    For it mentions the use of paving material for repair, and it is idle to suppose that paving material should, in repair of streets, be used for any other purpose than for paving.    Is this designation of the kind of paving material contractual and controlling?    We shall come to that later.

When we compare this franchise ordinance of 1900 with the franchise ordinance of 1892 construed in *Madison v. Southern Wis. R. Co.* 156 Wis. 352, 146 N. W. 492, we will find that sec. 2 of the latter provided:

"And the said company shall keep the space between the rails of each track and for the space of one foot on the outside in proper repair so as not to interfere with travel over the same, and shall keep the same in proper order and cleanliness at its own cost and expense.    It shall be the duty of said company to repair any and all damage done to the streets, macadamized curbs, cross or sidewalks, gutters or other public or private property by the construction or repairing of the tracks along the streets as herein provided for."

It may be noticed if these words were merely contractual this ordinance would be much stronger against compelling the street railway to pave the zone in question than is the *Milwaukee* ordinance of 1900.    The Madison ordinance of 1892 was granted (sec. 1) "subject to all general provisions of statute law now in force and applicable thereto and to such reasonable rules and regulations respecting such streets and highways and operation of cars as the said council may from time

to time enact." Specific powers of regulation were then expressly reserved in the matter of imposing a license fee, but not in the matter of regulating repair or paving of the belt or zone in question. The *Milwaukee* ordinance of 1900 (sec. 3) contained the following:

"All rights reserved or secured to the said city by and under . . . the laws of Wisconsin relating to . . . the use and operation of all . . . tracks and [relating to?] everything connected with the exercise of the rights hereby or heretofore granted to said railway company . . . are hereby reserved to the city the same as though this ordinance had not been passed and the same [laws?] shall extend and apply to all franchises hereby granted except as herein otherwise expressly provided."

We do not consider it necessary that the statute laws of the state be expressly referred to in the ordinance in order to incorporate them therein. We wish here merely to show that the provisions of the *Milwaukee* 1900 franchise are in this respect the substantial equivalent of the Madison 1892 franchise. In the ordinance of 1900 in question here there is nothing to be found expressly providing that the laws of Wisconsin relating to everything connected with the exercise of the rights thereby granted shall not be applicable. On the contrary there is much to show that such laws are applicable. That the duty to keep in repair includes the duty to pave the zone in question is emphasized by the words, "with the same material as the city shall have last used to pave or repave these spaces and the street previous to such repairs." Here is an express recognition that the duty to keep in good repair includes the duty to pave. The railway company is to keep the described belt or zone in good repair with the same materials as the city shall have last used to pave or repave. We cannot think that the railway company is required to use paving material for other than paving purposes. To keep in repair by the use of paving material is to pave. It is therefore very clear that under sec. 2 of the ordinance in question the duty

to keep in repair is a continuing duty and includes paving, and therefore also repaving, whenever such pavement or repavement become reasonably necessary as stated to keep the street in good repair. It is also quite obvious that the words "same material" do not mean the identical blocks, brick, or asphalt, however worn out or rotten, but mean the same kind of material, that is to say, the same style of pavement. The defendant also expressly recognizes its duty to repave under the ordinance and offers to pave with the same material formerly used by the city upon the street and the zone in question.

A somewhat different but cognate question arises upon the requirement that such repair shall be made with the same paving material as the city shall have last used to pave or repave *the zone described and the street previous to such repairs.* When we consider that the duty to keep this zone in good repair is positive and absolute, and that the words following merely regulate the mode of performance of this duty, we perceive how irrational it would be to hold that the duty to keep in good repair is inferior and subordinate to the requirement concerning the kind of repair to be made in a given case. *Doyle v. New York,* 58 App. Div. 588, 69 N. Y. Supp. 120. This given case is that of a street which was formerly paved by the city from curb to curb.

Let us first apply the ordinance to the case of a street paved at the time of the enactment and acceptance of the ordinance as most surely within its scope. That is the instant case. Under the literal terms of this provision the railway company would have the right, whenever repairs which involved paving or repaving become necessary, to use the old style of pavement for that purpose. If there had been no change in the kind of pavement used no difficulty would exist. But where a change of the kind or style of pavement was made the railway company might insist upon the old style of pavement for the first repair following the

change. When by lapse of time and wear and tear the next repair of the zone in question is due from the railway company, how shall it be made? With the same material first used by the city or with the changed material second used? In the case instanced it will be observed that the first used material was used by the city to pave the street and zone in question, and in the second instance the city did not pave both the street and the zone in question, but the zone in question was repaved by the railway company with the old style of pavement. The literal terms of the ordinance would therefore permit the railway company to go on forever using a pavement of the original or first kind. But this right of the railway company to make repairs by using the original style of pavement is subject to the paramount provision that it keep the street in good repair and the continuing power of regulation contained in sec. 1862, *supra*. When we come to a case where the street could not be kept in good repair by the continued use of the first or original style of pavement, the right to use such must, by force of sec. 1862, *supra,* yield to the duty to keep the street in good repair, even in a case where the street was paved when the ordinance was enacted and accepted. It cannot be held that the city has bartered away its governmental power to order the whole street paved in such manner and with such material as public interest requires. The provisions of this ordinance must be reconciled. This can only be done by allowing the railway company to use the original style of pavement in all cases where such use is consistent with good repair; that is, where after such use the street, notwithstanding a different pavement is used upon the remainder thereof, is, with the zone in question paved in the old style, still in good repair.

The words of the ordinance are that the railway company "shall . . . at all times . . . keep" the zone in question "in good repair . . . with the same material," etc. Where the street cannot be kept in good repair with the same material

the railway company has failed in its duty.    It is not permissible to interpret the words "keep in good repair" as excluding the duty to pave, where without such pavement the street would not be in good repair.    This is so if we are to follow the decisions already made and above referred to, and for the further reason that the ordinance expressly makes good repair to include paving and repaving with certain described materials.    The real position of respondent upon this point amounts to saying that the railway company can only be required to pave with the material formerly used by the city, and that it may stand upon this right and so compel the city to do the paving of the zone in question at its own expense or at the expense of the abutting property owners if the city desires or requires any different kind of pavement from that first used.· This is a sort of "holdup," proper enough if one stands out upon an absolute legal right of his and refuses to surrender it except for some concession by the other side.    If, however, the railway company is bound to keep the zone in question in good repair, with the old kind of pavement if possible, but in good repair anyway, this right to use the old style of pavement will be found to turn upon whether by such use the zone in question is or can be kept in good repair.    The city ordinarily has the right to determine within reasonable limits what constitutes good repair, and has not deprived itself of the power, nor can it do so if the provisions of sec. 1862, *supra,* are to prevail, according to the latest decision of this court.    Notwithstanding the duty cast upon the railway company to keep this zone in good repair with the old style of pavement if possible, but in good repair anyway, there may be many instances in which the paving will still be done by the city, as, for example, where the railway company is not ordered to do so, where a mutual agreement is arrived at between the railway company and the board of public works that the city shall pave in the instance concerned, or where the railway company refuses to repair or neglects to do so and the city, instead of

proceeding by *mandamus* as in this case and subjecting itself to the delays of litigation, does the work at once and charges the expenses up to the railway company. These are the matters apparently covered and provided for by sec. 9 of the ordinance. From this analysis of the terms of the ordinance we think it appears that provisions therein relating to the kind of pavement to be used are not contractual, but are subject to the regulation from time to time mentioned in sec. 1862, *supra*.

It appears from the relation as stated that the former pavement was a cedar block pavement upon a plank base resting upon a sand foundation, which is now worn out, dilapidated, and dangerous, and that outside of the zone in question the city has paved the street with an asphalt pavement resting upon a concrete foundation. It is also averred in the relation that to pave the zone in question with such cedar block pavement would not properly safeguard persons using the street or property. We think this is equivalent to an averment that the street would not be left in good repair, but such want of good repair ought to be expressly stated. The return admits most of the material averments of the relation, but takes issue upon the interpretation of the ordinance, and asserts the right to continue the cedar block pavement. It is not contended by counsel for respondent either in his brief or argument, as we understand him, that the city in 1900, when the franchise ordinance in question was enacted and accepted, had determined that for all future time during the life of the ordinance the mere use by the railway company of the former style of pavement would always constitute good repair. Counsel for respondent, however, does insist that the railway company has performed its duty of keeping the zone in question in good repair whenever it has by the use of the former materials produced a condition of good repair in the said zone, whether this repair is satisfactory to the city or not. He thus apparently rests upon what he considers a contract right. But it was said in *Madison v. Southern Wis.*

*R. Co.* 156 Wis. 352, 146 N. W. 492, with respect to a simi-
lar provision for repairs:

"The idea of the lawmakers is that the broad power is not
subject to exhaustion or limitation by any specific require-
ment in the grant. Note the words, 'from time to time,'
showing the legislative idea was that changed conditions,
within the life of such a franchise, will be quite likely to re-
quire physical and other changes in the manner of using the
streets which could not be foreseen and particularly provided
for in advance."

It was also said in the case last mentioned with reference
to and in explanation of *State ex rel. Att'y Gen. v. Madison
St. R. Co.* 72 Wis. 612, 40 N. W. 487, as follows:

"The spirit of the decision is that such statute [sec. 1862,
Stats.] is a part of such a franchise and contemplates that
the municipality shall have the broad continuing power of
regulation, enabling it to deal with conditions as they may
exist from time to time." See, also, *Eastern Wis. R. & L.
Co. v. Hackett,* 135 Wis. 464, 115 N. W. 376, 1136, 1139.

Sec. 1862, Stats., provides that every street railway shall
be constructed upon the most approved plan and be subject
to such reasonable rules and regulations as the proper mu-
nicipal authorities may by ordinance, from time to time,
prescribe. No ordinance qualifying or modifying the terms
of the original ordinance of 1900 with reference to the duty
of the street railway company to pave between its tracks is
pleaded and we assume that none was enacted. The correct
practice would have been for the common council by ordi-
nance to prescribe the duty of the street railway company
to keep this zone in repair by constructing therein an asphalt
pavement upon a concrete foundation to correspond with the
remainder of the street, and so comply with sec. 1862, Stats.
It appears without controversy that the city has completed
upon the remaining portions of the street an asphalt pave-
ment on a concrete foundation. Before doing this the com-
mon council must, either upon petition of the abutters or by
the votes of three fourths of the aldermen elected and a ma-

jority of the aldermen of the ward or wards in which such paving was done, have adopted a resolution ordering this paving of the street. Sec. 6, ch. VII, City Charter. Although this might be somewhat irregular, and the duty should under sec. 1862 have been imposed upon the railway company by ordinance, still a resolution might operate as an ordinance in the particular case, and it may afford a sufficient basis for the maintenance of this action and one which the respondent could defeat, if at all, only by showing the absence of any lawful or proper ordinance or equivalent resolution requiring pavement of the zone in question to correspond with other pavement on the adjoining portions of the street, and the fact that the zone in question as it proposes to repair it will, relatively to the remainder of the street, be in a condition of good repair. If the city is unable to show that any lawful change was made in the ordinance of 1900, the return of respondent averring its readiness to put the zone in question in good repair as required by that ordinance states a good defense, because we may assume in support of the pleading that it is in that manner possible to create a condition of good repair. Instead of demurring to such return the relator should by replication have averred the impossibility of good repair in the manner proposed by respondent and that the ordinance of 1900 was, after its enactment, amended or modified by an ordinance or resolution legally equivalent to an ordinance requiring the respondent to pave the zone in question with the same material as is used upon the remainder of the street. It is not intended to conclude the respondent upon the question of whether a resolution may be, in any case under the circumstances existing here, equivalent to an ordinance. We have had no argument upon that point.

It follows that the order should be affirmed, and the cause remanded for further proceedings according to law upon the merits of the controversy.

*By the Court.*—Order affirmed, and cause remanded for further proceedings according to law.

WINSLOW, C. J.   I am unable to agree with the reasoning of the court in these cases, and I wish to state briefly the grounds of my dissent without attempting extended argument.

As I read the ordinance, it requires the company to repair but does not require it to repave, although the subject of repaving was in mind.   Sec. 2 of the ordinance provides as follows:

"It shall be the duty of said railway company at all times to keep in good repair the roadway between the rails and for one foot on the outside of each rail as laid, and the space between the two inside rails of its double tracks with the same material as the city shall have last used to pave or repave these spaces and the street previous to such repairs, unless the said railway company and the board of public works of said city shall agree upon some other material, and said company shall then use the material agreed upon."

. Sec. 9 of the ordinance provides specifically and carefully what the duties of the street railway company are in case the city at any time determines to pave "or repave" the street. It reads as follows:

"Whenever the said city shall determine to· pave or repave any street upon which street-car tracks are or shall be situate, the board of public works shall give notice thereof to said railway company, and thereupon said railway company shall immediately make all such repairs, connections, conduits and improvements as it shall then deem necessary for the use and operation of its tracks and railway; after any such street shall be paved by said city, the pavements thereon and the pavements upon any and all streets heretofore paved by said city shall not be opened or disturbed by said railway company for any purpose whatsoever, except by permission in writing therefor signed by the mayor and the members of the said board of public works.   And whenever any such permit shall be given the city engineer shall promptly give plans and specifications for opening and closing the pavement, and said railway company shall do such work according to such plans and specifications and under the super-

vision of said board of public works and city engineer and to their satisfaction, and said board shall have power to employ necessary and competent inspector or inspectors to actively superintend the work, and his compensation shall be paid by said railway company; and if said railway company shall fail or neglect or refuse to properly replace or repair any pavement so opened the city shall have the right to replace or repair the same by and under the direction of said board of public works, and said railway company shall pay the actual cost and expense thereof."

The two sections taken together seem to me to be clear. It is certain that "repairing," "paving," and "repaving" were all in mind. Paving and repaving are expressly provided for and are to be done *by the city*. Before either is done the railway company is to make all repairs, connections, conduits, and improvements required for the operation of the railway in order to obviate as far as possible the necessity of opening up of the pavement in the future, but if such necessity arises the opening and closing of the pavement is to be done by the company at its own expense under supervision of city officials. The company is "at all times to keep in good repair the roadway between the rails and for one foot outside of each rail . . . with the same material as the city shall have last used to pave or repave *these spaces* and the street previous to such repairs," unless a different material is agreed upon.

The scheme seems perfectly simple and the provisions for carrying it out unambiguous. The *city* is to do all paving and repaving, the *company* is to prepare all its necessary conduits and connections before the city does the paving or repaving, and is to keep the pavement which the city has put down in these spaces, *i. e.,* the railway zone, "at all times in good repair," with the same material unless some other material is agreed upon. Language could hardly be plainer as it seems to me. The difference between the provisions of this ordinance and the provisions of the ordinances involved

in the recent cases of *State ex rel. Milwaukee v. Milwaukee E. R. & L. Co.* 151 Wis. 520, 139 N. W. 396, and *Madison .v. Southern Wis. R. Co.* 156 Wis. 352, 146 N. W. 492, is to my mind very marked.

The logical result of this decision, as it seems to me, is that no contract with regard to paving can be entered into between the city and the railway company under the terms of sec. 1862, Stats., which the city may not abrogate at any time by passing an ordinance to that effect.

I find nothing in sec. 1862 which justifies this conclusion, and it seems to me that it is contrary to the universal current of authority. *Manitowoc v. Manitowoc & N. T. Co.* 145 Wis. 13, 129 N. W. 925, and cases cited in the opinion. That section provides that cities may grant to street railway corporations the right to construct and operate street railways "upon such terms" as the proper authorities may determine. This provision is entirely separate and independent of the later provision in the section to the effect that every such road shall be subject to such "rules and regulations" as the municipal authorities may from time to time provide. It is very plain to me that the provisions of the ordinance in question prescribing which party shall do paving and which party repairing are "terms" within the meaning of sec. 1862, and it is equally plain to me that the "reasonable rules and regulations" which the city is authorized to impose from time to time afterwards are simply police regulations not inconsistent with the "terms" originally imposed. Otherwise it would seem that the city might at any time require the street-car company to pave the whole street and justify its action as an exercise of the reserve power to impose "reasonable rules and regulations."

BARNES, J., and VINJE, J.    We concur in the foregoing dissenting opinion of the Chief Justice.