CITY OF SUPERIOR, Appellant, vs. DULUTH STREET RAILWAY COMPANY, Respondent.

*December 6, 1917—January 5, 1918.*

*Municipal corporations: Ordinances: Franchise contracts: Modification: Construction: Street railways: Repaving and repairing track zone: Extra expense of paving caused by tracks: Increased width of street.*

1. Within a certain field municipalities may enter into agreements with common carriers which shall have the same binding force and effect as though between individuals, and such contracts may not be lawfully changed by one party thereto without the consent of the other.
2. The city of Superior by ordinance granted a franchise to a street railway company, which was duly accepted. The ordinance declared that it should "have the effect of and be a contract between" the city and the company. By a subsequent statute

amending the city charter said ordinance was ratified, confirmed, and validated, and it was provided that the rights granted thereby should not be impaired. The ordinance provided in sec. 5 that "in case the city shall pave or otherwise improve the surface of any street along which any of said company's tracks may run, said company shall pave or otherwise improve the space between the rails of such track or tracks, in conformity with the improvement of the street outside of such tracks. Provided, however, that in case of any track operated by other power than animal power, the company shall be required to pay only so much of the expense of paving the street as is made extra by reason of such track." *Held*, that the obligation of the company under this provision became a binding contract which the city could not, without the company's consent, alter either by ordinance or under any power granted by sec. 1862, Stats., to prescribe "reasonable rules and regulations."

3. The language of the proviso in sec. 5, above quoted, clearly indicates that upon a change of the motive power to electricity, lessening the wear and tear of the pavement between the rails, there was to be a decrease, not an increase, in the amount of space in the street for which the company must bear the expense of paving; and where, pursuant to sec. 959—30c, Stats., the width of pavement was fixed, on account of street railway travel, at ten feet wider where there was a single track and fourteen feet wider where there were double tracks than would otherwise have been required, the company could not be held chargeable under said sec. 5 with the cost of paving the ten and fourteen feet respectively of extra width.

4. Another provision (in sec. 9) of the ordinance franchise, requiring the company "at its own cost and expense" to "keep the space between the rails in suitable order and repair, in conformity with and as a part of the public highway," relates only to the duty to repair, separate and distinguished from the duty to pave or to repave provided for in sec. 5.

5. When, therefore, a new pavement was laid after the motive power had been changed to electricity, the company was properly held chargeable only with the extra cost necessitated by the interference with placing the paving material on the street caused by the presence of the tracks and ties, and not with the cost of repaving between the rails or the cost of paving the extra ten or fourteen feet in the width of the pavement fixed as above mentioned.

APPEAL from a judgment of the circuit court for Douglas county: FRANK A. ROSS, Circuit Judge. *Affirmed.*

Prior to 1891 there had been granted by the plaintiff a franchise to the Douglas County Street Railway Company, defendant's predecessor.

(1) In sec. 17 of such ordinance appeared the following: "This ordinance shall have the effect of and be a contract between the city of *Superior* and the Douglas County Street Railway Company, and shall be the measure of the rights and liabilities of the said city as well as of said company."

And in sec. 18: "The provisions of this ordinance shall apply to the successors and assigns of the Douglas County Street Railway Company."

By sec. 247, ch. 124, Laws 1891, amending the law incorporating the city of *Superior,* it was provided that the rights granted by the said city of *Superior* to the Douglas County Street Railway Company should not be impaired and that the above mentioned ordinance granting the same should be ratified, confirmed, and validated.

The following are the only other provisions of said ordinance that are material to this case:

Sec. 5 is as follows:

"The track of all such railways shall be laid so as to conform with the established grade of the street on which they may be built, whenever such street may have been graded in accordance with such grade by the city; but whenever the city shall change the established grade of any street or streets, or any portion thereof, the said company shall raise or lower the track so as to conform to any such change of grade; and where any street is not graded to an established grade, the said company shall lay its tracks so as to conform to the surface of such streets; provided, that the company shall raise or lower the same to the established grade whenever graded by the city; and in case the city shall pave or otherwise improve the surface of any street along which any of said company's tracks may run, said company shall pave or otherwise improve the space between the rails of such track or tracks, in conformity with the improvement of the street outside of such tracks. Provided, however, that in case of any track operated by other power than animal power, the

company shall be required to pay only so much of the expense of paving the street as is made extra by reason of such track.    The paving of the space between the rails with either cobble stone or cedar blocks, the same to be laid in a good substantial manner, shall be deemed and accepted as a full compliance with this section, in any case where said company may pave any of its tracks prior to the paving of the street; but in such case, whenever the company shall renew said paving, it shall conform the same to the paving of the street, if the street be paved at the time of such renewal."

Sec. 9 is as follows:

"The company's tracks shall be laid in the center of the street or highway, in all cases where it is practicable so to lay them, and said tracks shall not, except where reasonably necessary, be laid within twelve feet of the sidewalk upon any street; and said company shall, at its own cost and expense, keep the space between the rails in suitable order and repair, in conformity with and as a part of the public highway."

The franchise was accepted by defendant's predecessor and a street railway constructed and operated under the same. Shortly subsequent to the granting of the franchise and in 1890 or 1891 the system was changed from animal power to electric power and has been continued as such since then.    In 1900 all the property of the then street car company and its rights under the franchise were conveyed and transferred to the defendant, which since said time has continued to operate a street railway in the city of *Superior* under and by virtue of the terms of said franchise.

A more detailed history of this franchise and the view of this court upon it in a case where it challenged the right of the railroad commission to change the rate of fare to be charged will be found in *Duluth St. R. Co. v. Railroad Comm.* 161 Wis. 245, 152 N. W. 887.

On June 9, 1915, the plaintiff enacted an ordinance providing as follows:

"Whenever the city shall pave or repave a street upon which a street-car track or tracks is laid, it shall be the duty

of the street car company owning such tracks or operating street cars thereon to pave or cause to be paved the space between the rails of its tracks at the same time the pavement shall be laid on the other portion of the street, and to use the same kind of material and pave according to the same specifications used by the city in paving the adjacent portion of the street."

The pavement on certain streets on which defendant had either its single or double tracks had been of cedar blocks which were worn out and such streets needed to be repaved, and after the passage of the ordinance of 1915 the plaintiff proceeded to improve and pave such streets with a permanent pavement on a concrete foundation. The width of such pavement on such streets was fixed by the board of public works of plaintiff to meet the reasonable necessities of the usual travel along such streets pursuant to sec. 959—30c, Stats., as follows:

"Whenever the council of any city shall pass a resolution directing that any street or alley be paved or repaved with a permanent pavement having a concrete foundation, or a pavement of bituminous macadam or concrete, the board of public works shall determine and fix the width of such pavement in order to limit the cost thereof to the reasonable necessities of the usual travel along said street."

And in so doing the pavement was made ten feet wider where defendant had a single track and fourteen feet wider where double tracks were laid on account of such street railway travel than would have been otherwise required.

By agreement the city proceeded and did all the work necessary for such pavement on the entire street surface on which such tracks were laid and then demanded that the defendant pay to the plaintiff as part of the cost of such new pavement the following items: (1) The extra cost necessitated on account of the interference with placing the paving material on said streets caused by the presence of the tracks and the ties, which amount was certified by the board of pub-

lic works and was thereafter paid by the defendant and does not enter into this litigation.    (2) The cost of paving so much of said streets as lies between the rails on each track. (3) For the expense of paving the extra ten or fourteen feet in width of the pavements on the streets in which were laid the single or double tracks of defendant.

Upon the trial it was held that neither the second nor the third item above specified was properly chargeable against the defendant and the complaint was therefore dismissed. From judgment of such dismissal plaintiff has appealed.

For the appellant the cause was submitted on the brief of *H. V. Gard* and *T. L. McIntosh,* both of Superior.

*W. R. Foley* of Superior, for the respondent.

ESCHWEILER, J.    The city, appellant here, claims that there are three separate grounds under any one of which it is entitled to recover against the defendant.    First, under the provision of sec. 9 above quoted, requiring the defendant, at its own cost and expense, to keep the space between the rails in suitable order and repair, in conformity with and as a part of the public highway; second, under that portion of the above named sec. 5 of the franchise reading as follows:

"And in case the city shall pave or otherwise improve the surface of any street along which any of said company's tracks may run, said company shall pave or otherwise improve the space between the rails of such track or tracks, in conformity with the improvement of the street outside of such tracks.    Provided, however, that in case of any track operated by other power than animal power, the company shall be required to pay only so much of the expense of paving the street as is made extra by reason of such tracks."

Third, under the ordinance of June 9, 1915, quoted above. And on this third point that under sec. 1862, Stats., reading as follows: Providing for the formation, powers, and franchises of street railways, and that every road constructed in accordance therewith shall "be subject to such reasonable

rules and regulations . . . as the proper municipal authorities may by ordinance, from time to time, prescribe," the ordinance of June, 1915, was a proper regulation of defendant and within the power of the common council of the city.

It will not be necessary in the disposition that we make of this case to enter into any comparison between the situation here and that involved in the determination of the cases concerning the paving in Milwaukee, Madison, and West Allis, respectively, found in *State ex rel. Milwaukee v. Milwaukee E. R. & L. Co.* 151 Wis. 520, 139 N. W. 396; *Madison v. Southern Wis. R. Co.* 156 Wis. 352, 146 N. W. 492, affirmed in *Southern Wis. R. Co. v. Madison,* 240 U. S. 457, 36 Sup. Ct. 400; *State ex rel. Milwaukee v. Milwaukee E. R. & L. Co.* 157 Wis. 121, 147 N. W. 232; *State ex rel. Milwaukee v. Milwaukee E. R. & L. Co.* 165 Wis. 230, 161 N. W. 745; *State ex rel. West Allis v. Milwaukee L., H. & T. Co., ante,* p. 178, 164 N. W. 837; and all dwelt upon in the briefs on this appeal.

The franchise or ordinance before us was legally passed by the common council, accepted and acted upon by defendant's predecessor. By clear and unmistakable language it provided that it should have the effect of and be a contract between the parties and be the measure of the rights and liabilities of each. Its provisions as such franchise were expressly ratified, confirmed, and validated by the legislature in 1891 in amending the charter of the plaintiff city.

Within a certain field—not always, it is true, as easily defined as it seems to be in this case—it is the recognized law that municipalities may enter into agreements with common carriers which shall have the same binding force and effect as though between individuals, and that such contracts may not be lawfully changed by one party thereto without the consent of the other. *Manitowoc v. Manitowoc & N. T. Co.* 145 Wis. 13, 27, 129 N. W. 925; *Detroit U. R. Co. v. Michigan,* 242 U. S. 238, 249, 37 Sup. Ct. 87; *New York E. L. Co.*

*v. Empire City S. Co.* 235 U. S. 179, 193, 35 Sup. Ct. 72; *Minneapolis v. Minneapolis St. R. Co.* 215 U. S. 417, 436, 30 Sup. Ct. 118; *Cleveland v. Cleveland City R. Co.* 194 U. S. 517, 24 Sup. Ct. 756; *Detroit v. Detroit C. St. R. Co.* 184 U. S. 368, 382, 22 Sup. Ct. 410.

The consideration of the questions in this case in no wise involves such as might be raised under the public utility law between the railroad commission of this state and such common carriers as, for instance, in the cases of *Milwaukee E. R. & L. Co. v. Railroad Comm.* 153 Wis. 592, 142 N. W. 491; *Calumet S. Co. v. Chilton,* 148 Wis. 334, 135 N. W. 131.

It must be here determined, therefore, whether the provisions of the franchise relating to the extent of space of pavement on a street occupied in part by a street car company for which the municipality here insists it may compel the street car company to pay, partakes of the nature of a contract, or is a mere rule or regulation which, irrespective of the provisions seemingly to the contrary in any such ordinance, the municipality may alter by virtue of the power resting in it while exercising a governmental function or by virtue of a power given to it under sec. 1862, Stats.

Sec. 5 of the ordinance makes express provision for the subject of paving or otherwise improving the surface of any street along which any of the tracks may be found. It provides that, in case the city shall pave or otherwise improve the surface of such streets, then the defendant shall pave or otherwise improve the space between the rails of such track or tracks in conformity with the improvement of the street outside of such tracks. Then follows the proviso that in case of any track operated by other power than animal power the company shall be required to pay only so much of the expense of paving the street as is made extra by reason of such tracks.

By sec. 9 provision is made as to the place on the street where such tracks shall be laid and that the defendant shall,

at its own cost and expense, keep the space between the rails in suitable order and repair, in conformity with and as a part of the public highway.

We can see no escape from the conclusion that these two sections are aimed at separate and distinct operations. Sec. 5 is evidently intended to control and regulate the subject matter of paving or improving the surface of the street when the city paves or improves such street. Sec. 9 is plainly aimed at regulating and controlling the matter of keeping the space between the rails in suitable order and repair. Each is a distinct and separate operation from the other.

It is apparent that the parties themselves elected to make them and treat them as independent of each other, and from their very nature they can be so separated; it would be a construction by force to hold that the provision in sec. 9 relates to repavements as well as repairs and that the force of sec. 5 is exhausted and becomes abrogated after the first pavement is laid. The counsel for appellant frankly confesses that he finds it hard to construe these two sections in a manner to support such a contention as the one he must make to establish his claim, and we find it impossible.

What the city here asks of the defendant, namely, to pay for the cost of the pavement between the tracks as one item and for the cost of the additional width of ten or fourteen feet of the pavement required because of street-car traffic as another item, involves a question of space to be covered by the pavement rather than one as to the kind of material which shall be used in paving any such space. In the former there is the idea of fixity or permanence, an element as capable of as accurate and absolute determination at the time when a franchise is passed and accepted as it can be thereafter. The one is immutable, the other from its very nature is subject to constant change and possible improvement.

The possibility of just such a demarcation between the duty to pave and the duty to repair was suggested in *State*

*ex rel. Milwaukee v. Milwaukee E. R. & L. Co.* 157 Wis. 121, 126, 147 N. W. 232.

The obligation, therefore, as to the amount of space which defendant might be required to pay for the paving being one as to which the parties might lawfully contract, and having by sec. 5 fixed their respective rights and liabilities, it became a binding contract beyond the power of the city, without the consent of the other party, to alter, either by the ordinance of June 9, 1915, quoted above, or by any power granted by sec. 1862, Stats.

We cannot assent to the theory contended for by appellant that by sec. 5 of the ordinance the company is chargeable with the cost of paving the ten and fourteen feet respectively of the extra width of the pavement required on the streets on which are laid the single or double tracks. No such obligation can be found, in the language of the ordinance, to have been intended to be imposed while animal power was the method of locomotion. The use of the word "only" in the proviso as to the effect upon defendant's obligation caused by the change to electric power, together with a consideration of the rest of the language used, clearly indicates that upon such change in motive power there was to be a decreasing and not an increasing of the obligation as to the amount of space in the street for which defendant might be required to bear the expense of paving. This view may well be strengthened upon the theory that with the use of animal power there is such substantial wear and tear between the rails from such power that the defendant should pay for the same, and that when there is substitution of a power that does not affect the surface between the rails or wear the same the company might be properly relieved from such expense.

The adoption of plaintiff's theory on this point, while it would relieve defendant of the paving of the four-foot eight and one-half inch space between the rails on the single-track streets, would require it to pay for paving the extra ten feet

in width outside the rails; and on the double-track streets relieve it of the obligation for the nine-foot five-inch space between the rails and yet add the expense of paving the fourteen feet extra width outside the rails.

In the case relied upon by appellant of *Duluth v. Duluth St. R. Co.* (Minn.) 163 N. W. 659, the franchise there involved contained provisions quite similar to those found in sec. .5 of the ordinance before us, except that in the proviso as to the change from animal power the word "railway" is used instead of the word "tracks" in the clause ending "made extra by reason of such tracks" in the franchise here. The Minnesota franchise had also a provision for repairing similar to sec. 9 here involved. That court affirmed a finding of the lower court that such a required extra width of pavement was to be at the expense of the street car company. The court there was asked to hold that the word "railway" above referred to was synonymous with the word "track" and to limit the additional expense required of the street car company to that caused by the mere presence of the rails and ties such as is involved in the item numbered (1) in the statement of facts herein and which was conceded and paid by the defendant. That court considered that the term "railway" was broader than the term "tracks" and that the term "railway" included the idea of the operation of tracks thereon. Applying the logic of that decision to the situation here, we would be giving too broad a construction to the term "track" as used in the *Superior* franchise before us to hold that this narrower term also included the same field of the operation of the cars as in the *Duluth Case*. The court in that case frankly conceded that the question as there presented was doubtful and perplexing. Careful consideration of that case does not cause us to come to any other view than that the trial court in this case reached the correct conclusion in his dismissal of the action.

*By the Court.*—Judgment affirmed.