WISCONSIN GAS & ELECTRIC COMPANY, Appellant, vs. CITY OF FORT ATKINSON and another, Respondents.

*March 11—June 20, 1927.*

*Municipal corporations: Sale of public utilities: Initial procedure by resolution: Finding of railroad commission: Notice of election: Sufficiency: Inclusion of more than one utility in single sale.*

1. Proceedings by a city of 5,500 inhabitants for the sale of gas and electric utilities owned by it were properly initiated by a resolution of the council under sub. (13) (a), sec. 66.06, Stats., in view of the history of the statute, ch. 40 of the Laws of 1917 and ch. 396 of the Laws of 1921 indicating that the legislature did not intend that the definition of the phrase "resolution or ordinance" in sub. (1), sec. 66.06, be strictly followed.   p. 240.

2. The special provisions of a statute are controlling over general provisions, and the procedure prescribed by sub. (13) (a), sec. 66.06, Stats., is special and has no application to any transaction other than the sale or lease of a public utility by a municipality. p. 241.

3. The only substantial difference between a resolution and an ordinance, apart from the subject to which it shall apply, is that one is required to be published subsequent to its passage and the other is not. p. 244.

4. The policy of the legislature in restating, consolidating, revising, and systematizing the statutes, and of the court in construing them, is that unless there is a clearly expressed intention to work a change in the substantive law the revised matter should be given the same effect that it originally had. pp. 245, 246.

5. A finding of the railroad commission in the language of sub. (13) (c), sec. 66.06, Stats., that the interests of the municipality would be best served by a sale of its public utilities, and prescribing the amount for which such utilities should be sold, is not void because of the commission's attempt to reserve a decision on the respective merits of private as opposed to municipal ownership, since such matter was surplusage; and though it should not have been incorporated, the finding was substantially in accordance with the statute and sufficient. pp. 246, 252.

6. A municipality in dealing with public property is subject to such restrictions and limitations as the legislature may impose; and where the legislature has imposed reasonable regulations on the sale of municipal property, the municipality must comply with such regulations in order to pass a good title. p. 248.

7. Notice of an election on the question of the sale of the public utilities, setting out a complete and sufficient description of the property to enable an action of specific performance to be maintained thereon, and setting out the terms of sale, was a sufficient compliance with sub. (13) (d), sec. 66.06, Stats., requiring the notice to contain a description and summary of the preliminary agreement. A summary of the proposed disposition of the proceeds of sale of public utilities is, however, not required to be set forth in the notice of election. p. 256.

8. Where, in response to claims made that the notice of an election on the sale of the utilities should contain a summary of the proposed disposition of the proceeds, such disposition was inserted in a second publication, the insertion thereof was not prejudicial, in that it was not argumentative but a mere re-

cital of a public record made in the course of the proceeding taken under sub. (13), sec. 66.06, Stats. p. 257.

9. The preliminary agreement by mistake including property in addition to that proposed to be sold and as to which the purchaser filed a disclaimer, the mistake will not be held prejudicial to the sale, since all the property sold was authorized by the resolution and the preliminary agreement. p. 257.

10. A municipality is not required to sell its utilities separately, and the sale of its gas and its electric utility does not present a double question which renders the proceeding invalid, on the ground that the electorate did not have an opportunity to vote separately on the sale of each utility. p. 258.

STEVENS, OWEN, and CROWNHART, JJ., dissent.

APPEAL from a judgment of the circuit court for Jefferson county; GEORGE GRIMM, Circuit Judge. *Reversed, with directions.*

Legality of attempted purchase by the plaintiff from the defendant city of gas and electric utilities. The city of *Fort Atkinson,* having 5,500 inhabitants, attempted to sell and convey to the plaintiff the gas and electric utilities owned by it. Those supporting the move to sell the utilities were actuated by a desire to pay off the bonded indebtedness of the city, reduce its tax rate, and enable it to build a new city hall. A preliminary resolution having been introduced and due notice of the intention of the council to act thereon having been given, the resolution was passed on October 5, 1926, by a unanimous vote of all the members of the council present. Apparently the proposal to sell the utilities met with quite general approval at first, but advocates of continued municipal ownership appeared, a spirited opposition arose, and the proposal to sell led to a hotly contested election.

Pursuant to the provisions of the statute the railroad commission of Wisconsin, upon the preliminary agreement being submitted to it, held public hearings in the city of *Fort Atkinson* on October 11th and October 15th and issued its order on October 20, 1926. The commission ap-

proved the preliminary resolution and fixed the price of the property at the sum of $450,000, to be paid in cash upon the execution and delivery of proper instruments for the conveyance of the title to said property from the seller to the buyer.   The court found:

"(8)  Thereupon, in further pursuance of the resolution of September 10th, steps were taken for a referendum ballot as required by law.   Notice of the election, including the form of ballot to be used, was published in the official papers of the city on October 21 and 22, 1926; but said notice did not include a full or adequate 'summary of the preliminary agreement' as required by law.

"(9)  On October 28th and 29th, but a few days before the election, the notice was again published, but it again failed to include the summary of the preliminary agreement required by law; there was, however, appended to it a statement of the disposition to be made of the proceeds of the sale."

A special election was held on November 2, 1926, and resulted in a majority of twenty-one votes for the sale.   The parties to the preliminary agreement then proceeded to carry it out.   By a resolution adopted on November 19th by the common council, pursuant to sub. (13) of sec. 66.06, Stats., the execution and delivery of a conveyance was directed. The plaintiff was prepared to pay the purchase price.   Doubts being entertained as to the legality of the proceedings, this action was begun to determine the matter.   The reasons for the commencement of this action are thus stated in the complaint:

"That inasmuch as said city, because of the limitation of its municipal powers, could not and cannot give a warranty deed warranting its titles to the said utilities, and as the said John Doe (alias) has given out and declared that said proceedings for such sale are irregular and illegal and cannot form the basis for a valid sale, the common council of the city of *Fort Atkinson* on November 19, 1926, in order to give the plaintiff opportunity to institute an action for the

purpose of quieting title to its contract interest in said gas and electric utilities, vested by the resolution of the common council of November 19, 1926, consummating such sale, authorized the plaintiff to pay the purchase price of said utilities, to wit, $450,000, in cash, into the hands of the clerk of the above named court, to be held pending the determination of this action and determination of title to such fund and title to the said utility properties respectively; that the sum of $450,000 is paid into the hands of the clerk of the above named court pursuant to such resolution concurrently with the commencement of this action."

This action having been begun in which plaintiff sought to quiet title in the plaintiff to the utility properties referred to, one *E. Wells Wilcox* entered his appearance as a resident and taxpayer of the defendant city, appearing for himself and other taxpayers similarly interested, and answered the allegations of the complaint. The answer set up considerable evidentiary matter, challenged the regularity and legality of the proceedings resulting in the alleged sale, and particularly set up that the proceedings for the sale of the utilities were void and of no effect for the following reasons:

"(a) Because the railroad commission failed to find that the interests of the municipality and of the residents thereof will be best served by the sale of said utilities, as required by law, whereby its order, the election, and all other proceedings in respect of the alleged sale were and are null and void.

"(b) Because the question of whether there should be a sale of the electric light utility, and the question of whether there should be a sale of the gas utility, were separate and distinct questions, and the proceedings for the sale of said utilities by said city were required to be so considered, and so separated, as to permit a separate vote upon each of said propositions, but that notwithstanding such requirements, all proceedings, including the ballot submitted to the voters, united said propositions, whereby said proceedings were nullified.

"(c) Because the question submitted not only combined the question of sale of both of said utilities, as above set

forth, but there was added to said question the further question of whether the funds derived from the sale of said utility property should be used for the purposes specified in said ballot, whereby the voter was not permitted to vote directly on the question of whether or not there should be a sale of said utilities, but was required to vote on the much-advertised city hall question, with the result that his vote did not reflect his will upon the real question involved.

"(d) Because the official notice advertising the election upon the question of sale, and the official communications issued with reference thereto, held out and represented to the public generally that the railroad commission had found that it was for the best interests of said city to sell said utilities, and thereby misled the voters of said city, with the result that said referendum election did not secure a lawful expression of the opinion and desires of the residents of said city.

"(e) Because the public funds of said city were improperly used to advance the views of only a portion of the taxpayers, to the disadvantage of the very large number of taxpayers opposed to said sale, which resulted in such an unfair advantage to the proponents of the sale of said utility as to account for more than the small margin represented by the majority vote.

"(f) Because the notices of sale were not properly given, and were not published for the statutory period of time, and because of the change in the form of the notices, and in the form of the ballot, such notices served to confuse the voter rather than to enlighten him.

"(g) Because the contract and the pretended notices are so indefinite in respect to the items of property covered and intended to be conveyed thereunder, and the terms and conditions are so indefinite and uncertain, that they do not comply with the statutory provisions under which the proceedings are conducted.

"(h) Because the preliminary agreement includes property of vital importance to the water utility of said city and necessary to its use, and no method is provided for fixing the rights or obligations of the contracting parties or for operation thereof, and notice of inclusion of waterworks property was withheld from the voters.

"(i) Because the proceedings were improperly initiated by resolution, instead of by ordinance as required by statute, and thus certain important procedural steps were omitted."

Upon the trial, as already indicated, the court found in favor of the defendants, being of the opinion that the preliminary agreement was incomplete in that it left certain important matters unprovided for, being also of the opinion that the election was illegal and that the deed of conveyance to the plaintiff is therefore void, his conclusion in this respect being based on two preliminary facts:

"(1st) That the finding of the railroad commission was not what the law requires, in that it failed to 'determine whether the interests of the municipality and the residents thereof will be best served by the sale.' This requirement cannot be waived by any one taxpayer assuming to act for all the rest. The statute in explicit language requires such determination, and the question of sale cannot be legally submitted to the electors until such determination has been made. The electors are entitled to be advised in the matter by their commission, created and maintained by them for such and kindred purposes, before they can be asked to vote upon the question of parting with any of their valuable utilities; and the situation is aggravated when, contrary to the fact, they are informed that the commission has advised a sale. . . .

"The other principal reason for holding the election void is that the one notice of election which was published the required number of days before the election did not comply with the statute. It was not sufficient that it refer to the preliminary agreement, but it must include a sufficiently complete 'summary of the preliminary agreement' to fairly inform the electors of the terms of that agreement so that they may intelligently express their approval or disapproval. The last notice published gave information as to the disposition of the proceeds of the sale but did not cure the defect in the first notice; nor could it have done so, because it was not published ten days before the election as required by law."

The court further said:

"I may add another reason for my decision, namely, that the preliminary agreement itself was void because it failed to take care of certain important matters, chief among which is the separation of the water-supply system from the electric plant, referred to in finding number eleven," which is as follows:

"11. The preliminary agreement was incomplete in that it left certain important matters unprovided for. The pumping equipments of the city's waterworks system are located in the electric building to be sold under the agreement. They would either have to be moved and relocated at large expense or terms would have to be made with the purchaser of the electric utility. The oversight was apparently recognized, and an attempt was subsequently made to provide for this. But the voters had not legal notice of it."

Judgment was entered accordingly, from which the plaintiff appeals.

We have endeavored to set out as briefly as possible an outline of the entire transaction. Other material facts necessary to a discussion and decision of the questions raised will be stated in the opinion.

For the appellant there were briefs by *Shaw, Muskat & Sullivan* of Milwaukee, and oral argument by *James D. Shaw.*

For the respondent *Wilcox* there was a brief by *Olin & Butler,* attorneys, and *H. L. Butler* and *R. M. Rieser,* of counsel, all of Madison, and oral argument by *Mr. Rieser.*

The following opinions were filed May 3, 1927:

ROSENBERRY, J. The legality of the proceedings which resulted in the attempted conveyance of the utilities to the plaintiff is challenged upon several grounds. The matter may be considered in a more orderly way by treating the several objections made by those opposed to the sale in the order in which they arose, rather than in following the order

in which they were presented in the briefs and upon the argument here.

It is urged that the proceedings were improperly initiated by resolution of the council. Sub. (13) (a) of sec. 66.06, Stats., provides: .

"A preliminary agreement with the prospective purchaser or lessee shall be authorized *by a resolution or ordinance* containing a summary of the terms proposed, of the disposition to be made of the proceeds, and of the provisions to be made for the protection of holders of obligations against such equipment or against the municipality on account thereof. Such *resolution or ordinance* shall be published in the official paper at least one week before adoption, or if there is no such paper, in some paper published in the municipality, if any, otherwise it shall be posted in four of the most public places in the municipality at least ten days before adoption. It may be adopted only at a regular meeting and by a majority of all the members of the board or council."

Ch. 66 is composed of over twenty sections, seventy-three subsections, and many paragraphs, and is a compilation of laws authorizing municipalities generally to do certain things; as for instance, one subsection relates to home rule; another to adjustment of assets and liabilities on division of territory; another authorizes municipalities to make appropriations for Fourth of July celebrations, Decoration Day, to promote prosperity, and other like purposes; another relates to mob damages; another, the power to enact certain police regulations. The subjects dealt with in ch. 66 are very little related except that each section confers certain powers in enumerated particulars upon municipalities.

Sec. 66.06 relates first to franchises, service contracts, joint use of tracks, acquisition of utilities, method of payment, management, charges. These embrace the first twelve subdivisions. In sub. (13) is found the provisions relating to sale and lease of utilities; sub. (14) applies to cities of the first class and is itself composed of ten paragraphs; sub. (15) relates to utility districts; sub. (17) relates to

docks and wharves; sub. (18) to ice plants; sub. (19) to fuel depots; sub. (20) to slaughter houses, sub. (21) to aerial landing fields.   Sec. 66.06 consists of ninety-three separate paragraphs, using the word in its ordinary sense, fifty-six of which precede the paragraph which authorizes the execution of the preliminary agreement.

Sub. (1) of sec. 66.06 is as follows:

"(1) *Definitions.*   The definition of 'public utility' in section 196.01 is applicable to this section.   Whenever the phrase 'resolution or ordinance' is used in this section, it means, as to villages and cities, ordinance only."

It was because of the provisions of sub. (1) that it is contended here that sub. (13) should be interpreted as if it read: "A preliminary agreement with a prospective purchaser or lessee shall be authorized by 'ordinance' containing a summary of the terms proposed," etc.   It must be conceded that if the language of the statute be followed literally that such is the result.   But there are many considerations which lead us to the conclusion that such was not the legislative intent.   In the first place, the terms are flatly contradictory.   As a matter of fact, elsewhere throughout the section the word "ordinance" is used where it is the appropriate method of procedure, and the term "resolution" is used where that is the appropriate method of procedure.   In addition to that, the method of consideration, the proposal to sell, is such as to make it a special procedure and take it out of the operation of a general statute.   The procedure prescribed by sub. (13) has no application to any sort of a transaction other than the sale or lease of a public utility by a municipality.   The special provisions of a statute are controlling over general provisions.   For instance, the by-laws of the city require that an ordinance or resolution shall receive three separate readings before its passage and that no ordinance or by-law or resolution shall have its second or third reading upon the same day unless same has been unanimously reported by the standing committee on by-laws and

ordinances.   The statute provides that the resolution or ordinance may be considered when it has been published in the manner prescribed by par. (a) of sub. (13).   It is quite apparent that it was not the legislative intent that resolutions or ordinances should follow the usual procedure, otherwise it would not have made special provision therefor.   It is the rule that where a power is created or conferred and the method of its exercise is prescribed, that if it be exercised in the manner prescribed in the act creating it, it is a valid exercise of the power.   There are many reasons for this special procedure.   In the first place, as we shall see later, the entire preliminary agreement must be submitted to the railroad commission and is subject to restatement by it. A special election must be held, and unless a majority of the electors vote in favor of the sale it cannot be made.   So that the resolution or ordinance is a mere initial step in a process, the final step of which must be taken by the electorate.   All that the common council does is to set the machinery in motion by which the proposition is submitted to the railroad commission and finally to the electorate.   It is a necessary step, but it determines nothing, not even the price or terms of sale.

A study of the history of the statute strongly confirms our conclusion that the legislature did not in fact intend to make any change in the law as it existed prior to the revision.   Sub. (13) was first enacted as ch. 40 of the Laws of 1917.   The language used in that chapter was:

"Before any town, village or city shall enter into such preliminary agreement providing for the sale or lease of any such plant or part thereof, the common council, board of aldermen, the board of trustees, the town or village board, or the governing body of such town, village or city shall authorize the execution of such preliminary agreement *by a resolution or ordinance* adopted at a regular meeting by a vote of at least a majority of the members-elect."

It also required publication for at least one week prior to the meeting at which the resolution was adopted. The words "Whenever the phrase 'resolution or ordinance' is used, . . . it means, as to villages and cities, ordinance," do not occur in the original act.

When the special provisions of ch. 40 are considered in connection with the law as it existed at the time of its enactment (1917), it is apparent that the legislature intended to provide a special procedure and take the matter out of the regular procedure prescribed for councils, otherwise it could not have been adopted as there provided, but other rules of procedure would have been applicable prescribing the number of times that a proposed ordinance must be read, etc. The provisions of the law relating to publication of ordinances and the rules of procedure for common councils of cities and the city of *Fort Atkinson* still exist in substantially the same form that they did in 1917, so that the same considerations apply now as in 1917, when the law was enacted, and in 1921 when it was incorporated in the revision. In addition to what has been said, procedure by resolution is much the more appropriate method of procedure.

"While a resolution in its nature is of a temporary character, an ordinance prescribes a permanent rule of conduct or government. The act of the council was by resolution, and the object of the act involving a matter of a temporary character, necessarily came within the field of action of the council in the form of a resolution." *Winninger v. Waupun,* 183 Wis. 32, 197 N. W. 249.

Such is the general rule. "A municipal ordinance or by-law is a regulation of a general, permanent nature, enacted by the governing council of a municipal corporation. . . . A resolution, or order as it is sometimes called, is an informal enactment of a temporary nature, providing for the disposition of a particular piece of the administrative business of a municipal corporation. . . . And it has been held that even where the statute or municipal charter requires the

municipality to act by ordinance, if a resolution is passed in the manner and with the statutory formality required in the enactment of an ordinance, it will be binding and effective as an ordinance." 19 Ruling Case Law, p. 895, § 194.

This court has also said:

"There is much confusion in the authorities in respect to whether municipal legislative action must be in the form of an ordinance, but the weight of authority is to the effect that, where that is not expressly required, a more informal method is sufficient, or the latter is to be given the effect of an ordinance where the exigencies of the particular case do not reasonably require the formal action." *State ex rel. Elliott v. Kelly,* 154 Wis. 482, 143 N. W. 153; *State ex rel. Milwaukee v. Milwaukee E. R. & L. Co.* 157 Wis. 121, 147 N. W. 232.

The only substantial difference between a resolution and an ordinance apart from the subject to which it shall apply is that the one is required to be published subsequent to its passage and the other is not. Each is subject to veto by the mayor. The words are not infrequently used interchangeably.

Ch. 66 as it now stands was created by ch. 396 of the Laws of 1921, which was Senate bill No. 22, 1921. In the revisor's bill what now appears as sec. 66.06 appears there as sec. 66.07. A careful perusal of the bill indicates the sources from which the material contained in the section was derived. Where a change was to be made in the law, that fact was indicated in the bill in accordance with secs. 43.08 and 35.08. In all situations presented by the multifarious matters in sub. (13) where ordinance is the appropriate method of procedure, that method is required to be followed even by towns. The words "resolution or ordinance" are only used in one other paragraph, par. 3 of sub. (9) (c), where it is provided:

"To secure the payment of principal and interest of such mortgage certificates, the chief executive and clerk shall

execute to the purchaser thereof, or to a trustee selected by resolution or ordinance," etc.

Manifestly, in this subsection as in sub. (13) the appropriate method would be by resolution. Having regard to the legislative intent to prescribe a special procedure; the history of the statute; the appropriateness of the method prescribed; and to the fact that it was the intention as shown by the revisor's bill not to change the law, it is considered that the rule laid down in *State ex rel. Globe Steel Tubes Co. v. Lyons,* 183 Wis. 107, 197 N. W. 578, should be adhered to, and that the paragraph should now be given the same effect that it had prior to its incorporation into ch. 66. See, also, *State ex rel. Bergenthal v. Bergenthal,* 72 Wis. 314, 39 N. W. 566; *Connor v. Marshfield,* 128 Wis. 280, 107 N. W. 639; *Milwaukee E. R. & L. Co. v. Railroad Comm.* 153 Wis. 592, 142 N. W. 491.

We are well aware that under ordinary circumstances and by application of ordinary rules of construction a different result might be reached, but a special situation exists of which the court has repeatedly taken cognizance. The work of restating, consolidating, revising, and systematizing our statutory law is an immense task involving a mass of detail, and it is almost inevitable that errors will creep in. Considering the time allowed, it is beyond the power of human vigilance to avoid it. It has been the policy of the legislature in the enactment of the revision, and the policy of the court in construing it, that unless there is a clearly expressed intention to work a change in the substantive law, the revised matter should be given the same effect that it originally had. Except in cases of conflict of statutory provisions where a choice must be made, and an amendment of one or the other therefore becomes necessary, an amendment has been rarely introduced by way of revisors' bills.

In *State ex rel. Globe Steel Tubes Co. v. Lyons,* already cited, the words "joint-stock company or association" were

read into the statute, being omitted in the revision. It is there said:

"It will be seen that the revisor's notes are treated as of much importance in ascertaining the legislative intent. This must be true to a greater extent where, as now, in this state a permanent revision system and an official revisor are provided by law. But without the aid of the revisor's notes, it is perfectly obvious from the statute, considered as a whole, that there was no legislative purpose in dropping the words from a single paragraph of the statute to change thereby the effect of the statute and relieve any person from taxation."

The matter is also discussed in *Pfingsten v. Pfingsten,* 164 Wis. 308, 159 N. W. 921.

From a consideration of the whole matter it is obvious that the legislature did not intend to work an inharmonious change in the law by the introduction under the title "Definitions" of the statement that where the phrase "resolution or ordinance" is used in the act it meant as to villages and cities ordinance only. Should the language of the statute be followed literally, the statutory law would not be simplified and made more plain but the contrary result would follow. The revisor stated to the legislature that the purpose was to avoid repetition and indicated no change in the substantive law. Definitions in the revision are ordinarily found at the beginning of the chapter or at least of a subheading in the chapter. The matter referred to is not a definition. It was probably inserted by the person who wrote the revision with the expectation that the words would frequently recur, but they do not recur, as already pointed out. Upon the whole case it is considered that the statute should be given the meaning which it had prior to the revision; that no change was worked thereby; and that the proceedings in the instant case were properly instituted by resolution.

The next and the principal proposition is that the order of the railroad commission is void because the commission failed to find that the interests of the municipality and of the

residents thereof would be best served by a sale of the utilities, which finding it was required to make by sec. 66.06, sub. (13), par. (c), which is as follows:

"The municipality shall submit the preliminary agreement when executed to the railroad commission, which shall determine whether the interests of the municipality and of the residents thereof will be best served by the sale or lease, and if it so determine, shall fix the price and other terms."

A great many extraneous matters are argued on both sides in connection with the interpretation of this subsection. It is quite apparent from a perusal of the record that there was injected into this campaign not only a good deal of personal feeling but a controversy as to the respective merits of private and municipal ownership. The echoes of this controversy quite apparently reached the ears of the railroad commission. On behalf of the plaintiff it is urged that the matter hereinafter set out introduced by the railroad commission into its order was done in response to the contention made by those representing the group opposing the sale and that defendants are therefore estopped and concluded thereby. The conduct of the parties can do nothing that will work a modification of the statutory duties imposed upon the railroad commission, and the railroad commission should proceed with the performance of the duties imposed upon it without regard to controversies relating to matters outside of and beyond its jurisdiction. It is also urged that to construe the statute as contended by respondents would vest in the commission legislative powers and would therefore violate constitutional limitations, citing *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 136 Wis. 146, 116 N. W. 905.

The argument of counsel is as follows:

"The legislature fixes standards in terms of fact — such as the requirements of reasonable safety for the public; reasonable rates; and adequate service. When, in par. (c) of the subsection in question, it requires the commission to so

act as to promote the best interests of the municipality, it must be deemed to refer to something other than the vague field of political opinion and public policy which might, except for constitutional restrictions, be embraced in the comprehensive term 'best interests.'

"If par. (c) is to be literally construed, the legislature has merely directed the commission to do that which in its judgment will best promote the public interest. Promotion of the public interest is the general object of all legislation. Such a direction does not provide a standard for a fact-finding administrative body. It is not a fact standard, but a general governmental ideal. So construed, par. (c) is void," citing *Dowling v. Lancashire Ins. Co.* 92 Wis. 63, 65 N. W. 738; *State ex rel. Adams v. Burdge,* 95 Wis. 390, 70 N. W. 347.

This leads to a consideration of the power of the legislature in the premises. It is a general rule that a municipality in dealing with public property is subject to such restrictions and limitations as the legislature may impose. *Huron Waterworks Co. v. Huron,* 7 S. Dak. 9, 62 N. W. 975, 30 L. R. A. 848; *Lake County W. & L. Co. v. Walsh,* 160 Ind. 33, 41, 65 N. E. 530; *Brockenbrough v. Board of Water Comm'rs,* 134 N. C. 1, 46 S. E. 28.

Without attempting to define the power of the legislature in detail, there can be no doubt that, where reasonable regulations are prescribed, the municipality must comply with such regulations in order to pass a good title. 3 Dillon, Mun. Corp. (5th ed.) p. 1596, § 998, and cases cited.

In dealing with municipalities, which are creatures of the legislature, the same constitutional restrictions do not apply that would apply in the case of private corporations, and for that reason the legislature has very broad powers. It is not necessary to say that the legislature could entirely prohibit a sale of public property by a municipality to sustain the powers conferred by par. (c) upon the railroad commission. What is there provided is that before a municipality, which is an agency of the state, may do certain things with respect

to property acquired by it in a proprietary capacity, the matter shall be submitted to the railroad commission, an administrative agency of the state, which shall determine whether or not the best interests of the municipality and the residents thereof will be served by the sale, and if the railroad commission is not of the opinion that the best interests of the municipality and of the residents thereof will be served by a sale the parties have no power to proceed further. The matter is at an end. The reason for the requirement is plain. The railroad commission has a large experience in utility business, a corps of experts at its command, and every facility for passing upon the real merits of the proposal. Local prejudices and jealousies do not enter into its determination.

Upon the matter being submitted to it by the municipality, the railroad commission proceeded to take testimony, and under date of October 20, 1926, made an order. The finding is incorporated in the order in the usual form and is as follows:

"From the testimony and evidence, the commission is of the opinion that the purchase price fixed in the preliminary agreement is fair and reasonable, and that if the people determine to sell the gas and electric properties, the terms of such preliminary agreement will best serve the interests of the municipality and of the residents thereof. In making this determination, however, the commission is following what it believes to be its duty under the statute and does not express an opinion as to the advisability or inadvisability of the proposed sale, that being a matter of public policy for the determination of the people of the city of *Fort Atkinson* by referendum as provided in said statute. In other words, the finding of the commission is to the effect that if the people of the city of *Fort Atkinson* wish to sell their public utility properties, the terms of the preliminary agreement will afford the city a fair compensation for said properties."

By the terms of this finding the commission found in the language of the statute that the interests of the municipality

and of the residents thereof will be best served by a sale in accordance with the terms of the preliminary agreement. The question presented is, Does the other language used in the finding limit or qualify the meaning of the finding to such an extent as to render it not in substantial compliance with the statute? The language of the statute is plain. The commission is required to find whether or not the best interests of the municipality and of the residents will be served by the sale. By "best interests" must be meant whether, upon a consideration of the whole situation, including the degree of efficiency of the plant, its past history, its future prospects, its charges for services, the quality of service rendered, the kind of service the municipality and the residents thereof are likely to receive, the price which the residents will be required to pay therefor, and other like material matters, to say which course will be for the best interests of the municipality and its residents. For example, in one municipality there might by reason of some unusual circumstance be a very highly efficient, economically-managed public utility, furnishing excellent service at a comparatively low cost. The prospects of a sale to a concern which could not render efficient service at a low price might lead the commission to the conclusion that the best interests of the municipality would not be served by a sale. On the other hand, a municipally-owned utility might be mismanaged, inefficient, rendering poor service at an excessive cost, and the circumstances be such that the interest of the municipality and of the residents thereof would be best served by a sale. Manifestly the commission is not required to pass upon questions of general policy or the respective merits of private as opposed to municipal ownership. That is a matter of public policy and a political question. The legislature has specifically provided that the determination of that issue shall rest with the electorate. The electorate is to pass upon all matters. It is not bound by the finding of the commission. If the electorate is of the opinion that the best interests of

the municipality and the residents thereof will not be served, it may say so. It may be opposed to a privately-owned public utility and it may veto the sale for that reason. It is quite apparent from a perusal of the finding that the commission did not proceed fearlessly to make the finding, but was afraid that an interpretation would be placed upon its official act which would put it in a position of favoring private as against municipal ownership and for that reason attempted to reserve a decision of that matter by the language of the finding. This it should not have done. When it complies with its statutory duty it has no concern as to other issues or matters outside of and beyond its jurisdiction. Whether its finding favors one party or the other to the controversy is immaterial and a matter not to be considered by the commission. That the commission considered it had performed its full statutory duty is shown by the fact that it proceeded by its order to fix the price of the utilities and the terms of sale as required by the act, "if it so determine." The order is as follows:

"It is therefore ordered that the preliminary agreement entered into between the city of *Fort Atkinson* and the *Wisconsin Gas & Electric Company* and submitted to the commission on October 8, 1926, providing for the purchase by said *Wisconsin Gas & Electric Company* of the property therein described, be and the same is hereby approved and the price to be paid for said property is hereby fixed at the sum of $450,000, to be paid in cash upon the execution and delivery of proper instruments for the conveyance of the title to said property from the seller to the buyer."

If the commission had not found that the best interests of the municipality and of the residents thereof would be served by the sale, they were required to proceed no further under the statute. It is only "if it so determine" that it shall proceed to fix the price and other terms. In passing, it may be well to call attention specifically to the fact that the duty of the commission is not limited to approving the preliminary agreement; it is authorized to revise the same to the extent

of fixing the price and prescribing the terms or conditions of sale. It is not bound to approve or reject the preliminary agreement as submitted. Upon a consideration of the whole matter it is held that the finding of the commission is in substantial compliance with the terms of the statute; that the matter inserted in the finding is surplusage, inserted for the purpose of indicating that the commission did not pass upon questions of public policy of a semi-political nature which were more properly to be submitted to the electorate. While the extraneous matter should not have been incorporated, the finding being substantially in accordance with the statute it is sufficient.

It is further urged that the proceedings are invalid because the notice of election did not contain a sufficient summary of the preliminary agreement. Par. (d) of sub. (13), sec. 66.06, provides:

"The notice of the referendum shall include a description of the equipment, and a summary of the preliminary agreement, and of the price and terms as fixed by the railroad commission."

Omitting the formal parts, the preliminary agreement is as follows:

"Witnesseth, the seller agrees to sell and the buyer agrees to buy that certain property hereinafter described, at and for the purchase price of four hundred fifty thousand and 00-100 dollars ($450,000), to be paid in cash upon the execution and delivery of proper instruments for the conveyance of the title to said property from the seller to the buyer.

"As part of the consideration for such purchase and sale, and of the consideration for the payment by the buyer of said sum of four hundred fifty thousand and 00-100 dollars ($450,000), the seller covenants and agrees to enter into a contract with the buyer in the standard form of contract in use by the buyer for the purpose of such contracts, covenanting and agreeing to buy from the buyer electric energy for the operation of the electric street lighting system of the

city of *Fort Atkinson* for a period of ten (10) years from and after the date upon which title to said property shall pass to the buyer, at the rates filed with and approved by the railroad commission of Wisconsin.

"The property to be sold to the buyer is described as fol- lows, to wit:

"(a) The physical property of the municipal gas plant owned by the city of *Fort Atkinson,* including the gas manu- facturing plant, holders, tanks, mains, pipes, meters, tools, material, supplies, appliances, automobiles and other convey- ances, office records, office furniture and fixtures, coal in storage or in transit, and all other real and personal property used and useful in the operation of said gas manufacturing and distribution system, including the real estate occupied by the gas plant in lots 1, 2, 3, 4, and 5, block E, Milo Jones Addition to city of *Fort Atkinson.*

"(b) The electric distribution system owned by the city of *Fort Atkinson,* including all poles and wires, trans- formers, lamps, substations, tools, machinery, buildings, boilers, engines, materials, supplies, appliances, automobiles and other conveyances; office records, office furniture and fixtures, meters, conduits, and all other property used and useful in the operation of the municipal electric utility sys- tem, including the parcel of land described as follows: 'Be- gin at a point on the west line of block 3, Barrie's Addition, which point is ten feet (10 feet) north of the north line of North Water street; run thence west to the Rock river; run thence southeasterly and easterly along the northerly shore- line of Rock river to a point six (6) feet east of the easterly building line, extended, of the municipal pumping station; run thence north to the center of North Water street; run thence west along the center line of North Water street to the west line of block 3, Barrie's Addition, extended; and run thence north to the place of beginning.'

"(c) Also such contracts, easements, privileges, fran- chises, and right-of-way grants as may be transferred legally to the buyer and are useful or valuable in the operation of the business of the gas and electric systems to be purchased by the buyer.

"It is agreed that the transfer of title shall be made and the purchase price paid on December 1, 1926. Revenue accruing prior to December 1, 1926, shall belong to the

seller.   Revenue accruing after December 1, 1926, shall belong to the buyer.

"This preliminary agreement is made pursuant to the provisions of subsection (13) of section 66.06 of the Wisconsin Statutes of 1925, and in case the railroad commission of Wisconsin shall fix a price for said property larger than the purchase price agreed upon, then the price to be paid by the buyer to the seller shall be fixed by such commission.

"This preliminary agreement is authorized by a resolution of the common council of said city of *Fort Atkinson,* adopted in pursuance to the terms of said subsection (13)."

The notice of election, with the exception of information to voters, is printed in the margin.[1]

---

[1] *To the Electors of the City of Fort Atkinson, Jefferson County, Wisconsin:*

Notice is hereby given that at the time of the general election to be held on the 2d day of November, 1926, a special election will be held for the purpose of taking a referendum vote pursuant to the provisions of subdivision 13 of section 66.06 of the Wisconsin Statutes for and against the proposed sale of the gas and electric utilities of the city of Fort Atkinson, Jefferson county, Wisconsin, upon the terms set forth in the preliminary agreement of sale executed between the city of Fort Atkinson and Wisconsin Gas & Electric Company, dated the 5th day of October, 1926, and at the price of four hundred and fifty thousand dollars ($450,000) cash, as set forth in said preliminary agreement of sale,—such terms of sale and price having been approved and fixed by the railroad commission of Wisconsin of the 20th day of October, 1926, and such railroad commission having determined that the interests of the city of Fort Atkinson and of the residents thereof will be best served by such sale.  The property and equipment proposed to be sold and included in such preliminary agreement and in the determination and approval of the railroad commission consists of the entire municipal gas plant and distribution system owned by the city of Fort Atkinson and all real and personal property owned by said city and used and useful in connection therewith, including the real estate occupied by the gas plant in lots 1, 2, 3, 4, and 5, block E, Milo Jones Addition to the city of Fort Atkinson; also the entire electric utility owned by the city of Fort Atkinson, including all real and personal property used and useful in connection therewith; together with a parcel of land described as follows:

"Begin at a point on the west line of block 3, Barrie's Addition in said city of Fort Atkinson, which point is ten feet (10 feet)

Wisconsin Gas & E. Co. v. Fort Atkinson, 193 Wis. 232.

It is argued that the notice of election did not contain a sufficiently complete summary of the preliminary agreement to comply with the statute. Par. (a) of the preliminary agreement covers the physical property of the gas plant, including property used and useful in the operation of the gas utility and certain described real estate occupied by the gas plant. Par. (b) describes the electric utility and the property used and useful in its operation, including certain specifically described real estate. Par. (c) includes contracts, easements, privileges, franchises, rights of way, which may be legally transferred to the buyer and which are useful and valuable in the operation of the business of the gas and electric utilities systems. The terms are set out in the first

north of the north line of North Water street; run thence west to the Rock river; run thence southeasterly and easterly along the northerly shore line of Rock river to a point six (6) feet east of the easterly building line, extended, of the municipal pumping station; run thence north to the center of North Water street to the west line of block 3, Barrie's Addition, extended; and run thence north to the place of beginning."

Also, all contracts, easements, privileges, franchises and rights of way belonging to and transferable by said city of Fort Atkinson which are useful in the operation of either or both of such utility systems. Such preliminary agreement provides that title shall be transferred and the purchase price paid on December 1, 1926.

The question of sale of such gas and electric utilities will be submitted for referendum vote on ballot corresponding to the sample ballot below.

### Official Referendum Ballot.

If you desire to vote for the sale of the gas and electric utilities of the city of Fort Atkinson make a cross (X) or other mark in the square after the word "Yes" underneath such question; if you desire to vote against such question make a cross (X) or other mark in the square after the word "No" underneath such question.

Shall the city of Fort Atkinson sell its gas and electric utilities to Wisconsin Gas & Electric Company according to the terms of the preliminary sales agreement dated the 5th day of October, 1926, at the sum of $450,000?

Yes ☐      No ☐

Notice is hereby further given that the said election will be held in the City Hall in the Sixth ward of the city of Fort Atkinson and that the polls will be opened 9:00 o'clock a. m. and close at 5:30 o'clock p. m.              EDWIN HEDBERG, City Clerk.

paragraph. It appears without dispute that there were no items of property not covered by paragraphs (a), (b), and (c), and unless the notice should include a complete copy *in extenso* of the preliminary agreement, we do not see what more could be done than was done to comply with the statute. There is a full, complete, and sufficient description of the property sufficiently definite to enable an action of specific performance to be maintained upon it. The terms of sale are set out in full, the elector had all the information that he could have as to what it was proposed to do under the terms of the preliminary agreement. It is considered that there was a full compliance with the statutory requirements in this regard. *Janesville Water Co. v. Janesville,* 156 Wis. 655, 146 N. W. 784.

It is also argued that the notice is insufficient because it did not include a statement as to what disposition was to be made of the proceeds of the sale. While the resolution authorizing the preliminary agreement must contain a summary of the disposition to be made of the proceeds, we find no requirement that the preliminary agreement shall contain such a summary or that the disposition to be made of the proceeds shall be set out in the preliminary agreement, and the statute requires that "The notice of the referendum shall include a description of the equipment, and a summary of the preliminary agreement, and of the price and terms as fixed by the railroad commission."

A summary of the proposed disposition of the proceeds is not required to be set forth in the notice of election. However, in response to claims made there was inserted in the second publication the following:

"The said sum of $450,000 to be utilized in accordance with the resolution adopted at a regular meeting of the common council held at the city hall, *Fort Atkinson,* Wisconsin, October 5, 1926, as follows: $231,750 for the retirement of city indebtedness; $160,000 for the erection of a memorial

and community building; $58,250 to be placed in the city treasurer's general fund."

It is argued that if this matter was not necessary to be inserted in the notice of election the opponents of the sale were prejudiced by its insertion in the second publication. It relates to a matter which was of public record, embodied in a resolution adopted by the common council, and while it was not required to be in the notice of election and was surplusage, it did not prevent the notice of election from being in substantial compliance with the statute. It was not argumentative. It was a mere recital of a public record made in the course of the proceeding taken under sub. (13).

It appears that by error the preliminary agreement described property not intended to be included therein and not intended to be sold to the plaintiff. On October 9, 1926, after the error was discovered, before the finding by the railroad commission the plaintiff executed and delivered a disclaimer by which it disclaimed any right or interest in or to the property mistakenly included. The trial court was of the opinion that the description in the preliminary agreement was so indefinite as to make it void. It could hardly be supposed that the preliminary agreement would cover matters in such detail as might be necessary in the draft of a final conveyance. The preliminary agreement is what its name indicates,—it is not a final draft, as is indicated by the fact that the railroad commission has power to alter its terms. Attention was called to the error and correction seasonably made. If the original resolution had not included property which was subsequently included by supplemental agreement, a more serious question would be presented. Here everything that was to be sold was included and by mistake the description also included some additional property. Under such circumstances it is considered that no one could be prejudiced thereby. All the property that will be sold was

authorized to be sold by the resolution and the preliminary agreement.

It is also urged that by combining the sale of the gas and electric utilities a double question was presented which renders the proceeding invalid, the electorate not having an opportunity to vote separately on the sale of each utility. We find nothing in the statute which compels a municipality to sell its properties separately. These properties may and probably do constitute an operating unit; at least it must be within the power of the common council under the statute, by the terms of the preliminary resolution, to so determine. The statute says that the city may sell or lease any public utility, and it is nowhere indicated that if it owns two and it appears to the municipal authorities to be to the advantage of the municipality to do so, that they may not be sold together. If any one would be prejudiced by such a proceeding it would be those who favored a sale. Those opposed to the sale of either would vote against the sale of both. Certainly those opposed to the sale are in no position to complain.

A perusal of the record satisfies us that the merits of this controversy were fully and adequately presented to the electorate of the city of *Fort Atkinson*. No doubt things were said and done that might better have been left unsaid and undone, but on that score honors seem to be easy on both sides. There can be no doubt that the electorate fully understood the issues presented. Whether the inclusion of the *surplusage* in the publication of the final ballot and in the ballot presented to the electors helped the one side or the other it is difficult to say. Whatever was done was done openly, there was no concealment, there was but one issue, and that was whether or not the city should sell its electric and gas utilities for a cash price of $450,000. The provisions of sub. (13) of sec. 66.06 were substantially complied with. Upon the execution and delivery of the proper con-

veyances and payment of the purchase price, plaintiff will take a good and complete title to the property.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for the plaintiff as indicated in this opinion.

STEVENS, J. (*dissenting*).   An examination of the entire record leads me to the conclusion that the preliminary contract for the sale of these municipal utilities was not made and submitted to the voters of the city in the manner required by the statutes, and that the electors were led to vote for the sale of these utilities largely because of their desire to have a memorial city building, and that in so doing they did not express their deliberate judgment upon the question of the sale of the gas and electric plants.

It also seems apparent that the city officials were so interested in reducing the municipal debt and in securing the municipal building that they did not exercise care to protect the interests of the public in making the sale.   Otherwise they would not have agreed to convey to the plaintiff as a part of the gas and electric utilities such things as the city jail and the pumping-station equipment which it was absolutely essential that the city should retain if it was to continue to operate its own waterworks.

The whole proceeding appears to have been conducted with a haste and a disregard of statutory requirements that should, in my judgment, be held to have invalidated the sale. No attempt will be made to consider all the defects in the proceedings, because there are two outstanding failures to comply with statutory requirements, either of which, in my judgment, is sufficient to invalidate the entire proceeding.

1. Sub. (13) of sec. 66.06 of the Statutes requires the preliminary agreement for the sale of a public utility owned by a city to be authorized by a "resolution or ordinance."

Sub. (1) of the same section provides: "Whenever the phrase 'resolution or ordinance' is used in this section, it means, as to villages and cities, ordinance only."

No rule is more firmly settled in Wisconsin than that which requires statutes "to be interpreted in accordance with their plain and obvious meaning and to carry out the clearly expressed legislative intent." *State v. Smith,* 184 Wis. 664, 668, 200 N. W. 638. "Whatever the rule or practice may be in other jurisdictions, this court has adhered consistently to the rule that where the language of the statute is plain and unambiguous it is not subject to construction and is to be enforced and applied in accordance with its terms, and that construction can be resorted to only when there is real uncertainty as to the meaning and intent of the legislative declaration." *Kieckhefer Box Co. v. John Strange Paper Co.* 180 Wis. 367, 398, 189 N. W. 145, 193 N. W. 487, 196 N. W. 572.

The language of sub. (1) of sec. 66.06 of the Statutes is as plain and unambiguous as the English language can make it. To hold that sec. 66.06 of the Statutes permits this preliminary agreement to be authorized by resolution is to disregard and override the obvious meaning of the language used by the legislature, and to add an exception to the statutes which the legislature itself has not seen fit to add thereto and which is in fact contrary to the expressed intent of the legislature as I gather that intent from the statutes. "It is not the function of the court to add language to a statute or to add exceptions" thereto. *State ex rel. U. S. F. & G. Co. v. Smith,* 184 Wis. 309, 316, 199 N. W. 954.

There is nothing in the application of the statute here in question to the subject matter of the sale of publicly-owned utilities that gives rise to any ambiguity. The requirement that such sale shall be authorized by ordinance instead of resolution is not a requirement that is either so absurd, harsh, or unreasonable as to involve the legislative purpose in obscurity or to produce a conviction that the plain and

literal meaning of the statute does not express the real legislative intent. "The act is so clear and explicit that it is not subject to construction. Construction may be resorted to only where ambiguity exists. It is impossible to discover any ambiguity in the statute with which we are dealing." *Rusk Farm D. Dist. v. Industrial Comm.* 186 Wis. 232, 234, 202 N. W. 204. Where "there is no ambiguity, uncertainty, or doubt about the meaning of the statute, . . . we must apply it as written." *Schaut v. Joint School Dist.* 191 Wis. 104, 108, 210 N. W. 270, 272.

It is not unreasonable to require an agreement to sell the plant which supplies a city with such necessities as gas and electricity and which involves the transfer of $450,000 worth of property to be authorized by the more formal and deliberate action which attends the adoption of an ordinance so as to prevent hasty and ill-considered action which might result under the less formal and less deliberate procedure ordinarily attendant upon the adoption of a resolution. Had the action been more formal and deliberate in this case, the city jail and the pumping plant of the city waterworks would probably not have been sold to the plaintiff as a part of the gas and electric utility.

The court can resort to the notes of the revisor of statutes only "where obscurity would otherwise exist." *State ex rel. Globe Steel Tubes Co. v. Lyons,* 183 Wis. 107, 119, 197 N. W. 578. The statute expressly provides that these "notes shall not constitute any part of the bill nor of the act if the bill shall be enacted." Sub. (3), sec. 35.08, Stats. These notes do not appear either in the session laws or in the statutes. They are not accessible to the people of the state who have occasion to examine and to rely upon the official editions of the statutes. To hold that a plain and unambiguous provision of the statute can be given a meaning contrary to its clearly expressed intent by reference to the notes of the revisor is to adopt a rule of construction which will render it unsafe for the people of the state to rely upon published

statutes no matter how clearly and unambiguously they express the legislative intent, without consulting the revisor's notes, which notes may not be accessible outside the archives in the capitol building at Madison, and they are not always accessible then without the expenditure of considerable time and labor, as members of this court have had occasion to know when they desired to examine these notes filed in the vaults of the secretary of state.   On the other hand, when an ambiguity appears upon the face of the statute, every one examining the statutes and relying upon them has notice of the fact that such uncertainty or ambiguity exists and that, if necessary, resort can be had to the revisor's notes as an aid in determining the intent of the legislature.

2. Sub. (13) (c) of sec. 66.06 of the Statutes makes the determination by the railroad commission of the question "whether the interests of the municipality and of the residents thereof will be best served by the sale" a prerequisite to the sale of any municipally-owned ·public utility.   This finding has not been made by the commission in this case. Had the commission simply fixed the price and terms of the sale it might have been presumed that it had performed its duty and made the finding which is a statutory prerequisite to the approval of the sale and the fixing of the price and terms of sale.   But the commission has left no room for presumptions.   By its order approving the price and terms of sale it has made it plain that it did not perform this statutory duty, for it recites that it "does not express an opinion as to the advisability or inadvisability of the proposed sale, that being a matter of public policy for the determination of the people of the city of *Fort Atkinson* by referendum as provided in said statute.   In other words, the finding of the commission is to the effect that if the people of the city of *Fort Atkinson* wish to sell their public utility properties, the terms of the preliminary agreement will afford the city a fair compensation for said properties."   It is clear from this

explicit statement that the commission carefully avoided any determination of the question whether the interests of the city of *Fort Atkinson* or its residents will be best served by the sale of its public utilities. I cannot concur in holding that this clear and explicit declaration by the commission that it did not perform its statutory duty can be disregarded as mere surplusage or extraneous matter which must of necessity be wholly disregarded before one can arrive at the conclusion that the commission has performed the duty imposed upon it by statute. All that the commission did was to approve the price and the terms of the sale and to determine that the terms of the preliminary agreement of sale will afford the city a fair compensation for its gas and electric plants, if the residents of the city determine that the same should be sold.

I concur in holding that the vesting of the power in the commission to determine whether the interests of the city and of its inhabitants will best be served by the sale of these plants does not constitute an unconstitutional delegation of legislative power, and dissent only from the holding that the commission has performed the duty imposed upon it by statute.

The legislature having determined that such a finding by the commission is an essential prerequisite to the sale of a municipally-owned utility and the required finding not having been made, I believe that the conclusion should follow that the city of *Fort Atkinson* could not transfer its gas and electric utilities to the plaintiff and the plaintiff had no right to a judgment quieting title to this plant in the plaintiff company.

I am authorized to say that Mr. Justice OWEN concurs in these views, and that Mr. Justice CROWNHART concurs in the second ground of dissent.

A motion for a rehearing was denied, with $25 costs, on June 20, 1927.